2002-NMSC-034

59 P.3d 491

**James A. HOLT and Terri L. Holt, Plaintiffs–Petitioners,**

v.

**NEW MEXICO DEPARTMENT OF TAXATION & REVENUE, Defendant–Respondent.**

**No. 27,445.**

Supreme Court of New Mexico.

Nov. 13, 2002.

Monica Ontiveros, Santa Fe, NM, for Defendant–Respondent.

James A. Holt, Terri L. Holt, Flora Vista, NM, Pro Se.

## OPINION

SERNA, Chief Justice.

{1} This Court granted the petition of James A. Holt and Terri L. Holt (taxpayers) for writ of certiorari to the Court of Appeals following its affirmance of the New Mexico Department of Taxation and Revenue (Department) hearing officer's denial of their protest and request for a refund. *Holt v. N.M. Dep't of Taxation & Revenue,* NMCA 22,622, slip op. at 1 (Mar. 5, 2002), *cert. granted,* 132 N.M. 193, 46 P.3d 100 (2002). The taxpayers argue that they are not liable for state income tax on wages earned by their employment within New Mexico. We hold that employment wages are income for

purposes of taxation. We also hold that the Department has the authority to examine information or evidence in order to determine or establish an individual's tax liability. Thus, we affirm.

## I. Facts and Background

{2} The taxpayers reported zero as the amount for their federal adjusted gross income on their federal tax return. They reported zero as their New Mexico taxable income. The taxpayers reported that $2009 had been withheld by the State, and they requested a refund. The taxpayers' W–2 forms for the tax year at issue showed that James Holt earned $47,561.03 in wages from his employment with the Public Service Company of New Mexico and that Terri Holt earned $15,281.28 in wages from her employment with BGK Asset Management Corporation. The Department established that their taxes were $2449 based on these W–2 forms and thus determined that they owed $440 in state income tax. The hearing officer denied the taxpayers' protest and request for a refund.

{3} The hearing officer issued a complete decision that thoroughly addressed the taxpayers' arguments. The Court of Appeals decided this appeal on the summary calendar, see Rule 12–210(D) NMRA 2002, and affirmed by memorandum opinion, see Rule 12–405(B) NMRA 2002, perhaps on the basis that the issues raised were "manifestly without merit." Rule 12–405(B)(5). While we agree that these issues are manifestly without merit, we granted certiorari and now resolve the issues by opinion because the appeal appears to present an issue of first impression and arguments that are likely to arise again, causing unnecessary expenditure of public resources. See NMSA 1978, § 34–5–14(B)(4) (1972) (providing that the Supreme Court has jurisdiction to review a decision of the Court of Appeals by writ of certiorari for issues of substantial public interest).

## II. Discussion

### A. Standard of Review

{4} An appellate court may set aside a decision by the Taxation and Revenue Department hearing officer only if it is arbitrary, capricious, or an abuse of discretion, if it is not supported by substantial evidence in the record, or if it is otherwise not in accordance with the law. NMSA 1978, § 7–1–25(C) (1989); *Siemens Energy & Automation, Inc. v. N.M. Taxation & Revenue Dep't*, 119 N.M. 316, 317–18, 889 P.2d 1238, 1239–40 (Ct.App.1994). It is the taxpayers' burden to demonstrate the existence of one of these bases for vacating the hearing officer's decision. "Any assessment of taxes or demand for payment made by the department is presumed to be correct." NMSA 1978, § 7–1–17(C) (1992). "The burden is on the taxpayer protesting an assessment by the [Department] to overcome the presumption that the [Department's] assessment is correct." *Hawthorne v. Dir. of Revenue Div. Taxation & Revenue Dep't*, 94 N.M. 480, 481, 612 P.2d 710, 711 (Ct.App.1980). The taxpayers fail to carry their burden; to the contrary, the decision of the hearing officer is particularly thorough and comprehensively addresses the arguments made by the taxpayers and the authority relied upon by them. On the other hand, the taxpayers do not address the overwhelming authority discussed in the hearing officer's decision that answers their claim.

### B. Employment Wages are Taxable Income

{5} The taxpayers argue that the wages they earned from their employment in New Mexico are not subject to either state or federal income tax, based on their reading of the federal tax statutes, cases, and regulations. They claim, based on their view of federal law, that they correctly completed a federal return, reporting zero as the amount of their adjusted gross income. The taxpayers assert that they must use this amount, zero, as their adjusted gross income for purposes of our state income tax, in accordance with state statutes, NMSA 1978, § 7–2–21.1 (1981) ("A taxpayer shall use the same accounting methods for reporting income for New Mexico income tax purposes as are used in reporting income for federal income tax purposes."), and the rules and instructions in

their state tax booklet. As discussed below, we reject these arguments.[1]

■ {6} As a general matter, the State of New Mexico has the authority to assess and collect taxes without federal supervision. *See Dep't of Revenue v. Arthur,* 153 Ariz. 1, 734 P.2d 98, 100 (Ariz.Ct.App.1986) ("The State of Arizona's power to tax is independent of the Constitution of the United States."). As noted by both the hearing officer and the Court of Appeals, the United States Supreme Court expressed:

> We have had frequent occasion to consider questions of state taxation in the light of the Federal Constitution, and the scope and limits of National interference are well settled. There is no general supervision on the part of the Nation over state taxation, and in respect to the latter the state has, speaking generally, the freedom of a sovereign both as to objects and methods.

*Mich. Cent. R.R. Co. v. Powers,* 201 U.S. 245, 292–93, 26 S.Ct. 459, 50 L.Ed. 744 (1906); *accord Weed v. Comm'r of Revenue,* 489 N.W.2d 525, 529 (Minn.Ct.App.1992) (relying on *Powers,* and holding, "The state need not rely on a constitutional amendment for the power to tax. The states possess the powers of a sovereign.").

{7} Under NMSA 1978, § 7–2–3 (1981), "[a] tax is imposed at the rates specified in the Income Tax Act upon the net income of every resident individual and upon the net income of every nonresident employed or engaged in the transaction of business in, into or from this state, or deriving any income from any property or employment within this state." As discussed below, we conclude that the taxpayers' employment

wages clearly falls within the term "net income."

{8} The Legislature has set out the method for determining an individual's taxable income. NMSA 1978, § 7–2–2(N) (1993) states that " 'net income' " is "base income" adjusted to exclude specific amounts which are not taxed, such as the standard deduction allowed by the federal government. *See* § 7–2–2(N)(1). In relation to the taxpayers, " 'base income' " is defined by Section 7–2–2(B) as their "adjusted gross income," adding or subtracting particular types of interest and deductions. Section 7–2–2(A) states that " 'adjusted gross income' means adjusted gross income as defined in Section 62 of the Internal Revenue Code."

■ {9} Thus, Section 7–2–2(A) incorporates by reference the definition from the Internal Revenue Code.[2] "[A] state has the power to gauge its income tax by reference to the income on which the taxpayer is required to pay a tax to the United States." *Champion Int'l Corp. v. Bureau of Revenue,* 88 N.M. 411, 416, 540 P.2d 1300, 1305 (Ct. App.1975). Section 62 defines adjusted gross income as gross income minus specific deductions. Pursuant to I.R.C. § 61(a), "gross income means all income from whatever source derived, including (but not limited to) ... [c]ompensation for services, including fees, commissions, fringe benefits, and similar items...."

{10} The Sixteenth Amendment to the United States Constitution states that "[t]he Congress shall have power to lay and collect taxes on incomes, from whatever source derived, without apportionment among the sev-

---

1. Throughout their petition, the taxpayers frequently present their claims without authority. As petitioners, the taxpayers "should properly present this court with the issues, arguments, and proper authority. Mere reference in a conclusory statement will not suffice and is in violation of our rules of appellate procedure." *State v. Clifford,* 117 N.M. 508, 513, 873 P.2d 254, 259 (1994). The fact that the taxpayers have opted to appear pro se is not relevant; a party appearing pro se is to be treated as any other party. *Udall v. Townsend,* 1998 NMCA 162, ¶ 9, 126 N.M. 251, 968 P.2d 341 ("We note that Father is representing himself on appeal. This fact, however, does not excuse any failure to comply with our rules of procedure."); *accord Clayton v. Trotter,* 110

N.M. 369, 373, 796 P.2d 262, 266 (Ct.App.1990) ("We realize that mother is proceeding pro se, but a pro se litigant is bound by all of the rules applicable to litigants represented by attorneys."); *Gutierrez v. N.M. Dep't of Human Servs.,* 102 N.M. 751, 753, 700 P.2d 654, 656 (Ct.App. 1985) ("Although appearing pro se, Wife is bound by all the applicable procedural rules.").

2. The taxpayers, without authority, argue that our Legislature cannot adopt laws by reference as is the case with Section 7–2–2(A). Although the taxpayers quote Article IV, Section 1 of the New Mexico Constitution, this provision does not address adopting laws by reference.

eral states, and without regard to any census or enumeration." "The starting point in the determination of the scope of 'gross income' is the cardinal principle that Congress in creating the income tax intended 'to use the full measure of its taxing power.'" *Comm'r v. Kowalski*, 434 U.S. 77, 82, 98 S.Ct. 315, 54 L.Ed.2d 252 (1977) (quoting *Helvering v. Clifford*, 309 U.S. 331, 334, 60 S.Ct. 554, 84 L.Ed. 788 (1940) and holding that payments for a meal-allowance are income within the definition of gross income). " 'Exercising this power, Congress has defined income as including compensation for services. [Section] 61(a)(1).'" *Hyslep v. United States*, 765 F.2d 1083, 1084 (11th Cir.1985) (quoting *Lonsdale v. Comm'r*, 661 F.2d 71, 72 (5th Cir. Nov.1981)). "In sum, the sixteenth amendment authorizes the imposition of a tax upon income without apportionment among the states, and under the statute, the term 'income' includes the compensation a taxpayer receives in return for services rendered." *Funk v. Comm'r*, 687 F.2d 264, 265 (8th Cir.1982). We conclude that the wages the taxpayers earned from their New Mexico employers is compensation for services under Section 61 and is thus part of the taxpayers' gross income for purposes of New Mexico income tax. *See, e.g., Combs v. Dep't of Revenue*, 331 Or. 245, 14 P.3d 584, 586 (2000) (en banc) ("Section 61(a)(1) of the Internal Revenue Code defines 'gross income' to include '[c]ompensation for services.' ").

{11} The taxpayers argued to the hearing officer that the fact that the definition of "gross income" in the 1939 version of the statute included the terms "salaries" and "wages" but these terms were not included in the 1954 version supports their claim that Congress did not intend to include wages within the meaning of "gross income." *See* Internal Revenue Code of 1939, ch. 1, § 21, 53 Stat. 1, 9 (repealed 1954). The hearing officer correctly rejected this argument. "Although Congress simplified the definition of gross income in § 61 of the 1954 Code, it did not intend thereby to narrow the scope of that concept." *Kowalski*, 434 U.S. at 83, 98 S.Ct. 315. The Supreme Court observed that " '[Section 61] corresponds to section 22(a) of the 1939 Code. While the language in existing section 22(a) has been simplified, the

all-inclusive nature of statutory gross income has not been affected thereby. Section 61(a) is as broad in scope as section 22(a).'" *Id.* at 83, 98 S.Ct. 315, n. 13 (quoting H.R.Rep. No. 83–1337 (1954), *reprinted in* 1954 U.S.C.C.A.N. 4017, 4155). The broad nature of the term "gross income" thus includes wages or salaries.

{12} The taxpayers argue that Section 61 "only attempts to define 'gross [i]ncome' but fails to do so because it defines 'gross income' by stating '[g]ross [i]ncome means all income . . .'. A word cannot be defined by using the same word in the definition." This argument is without merit for several reasons. First, the taxpayers fail to include the operative portion of the definition in their petition. Through its plain language, Section 61(a) includes "compensation for services" in its definition of gross income. Our conclusion that compensation for services equals wages earned from employment is confirmed by state statute. Section 7–2–2(C) states that " 'compensation' means wages, salaries, commissions and any other form of remuneration paid to employees for personal services." The plain language of Section 7–2–2(C) and Section 7–2–3 specifically indicates that employment wages and salaries are taxable income. *See Whitely v. N.M. State Pers. Bd.*, 115 N.M. 308, 311, 850 P.2d 1011, 1014 (1993) ("[T]he plain language of the statute [is] the primary indicator of legislative intent."). Second, if our Legislature, or Congress, chooses to use one of the same words being defined in its definition, that is its prerogative. "Unless a word or phrase is defined in the statute or rule being construed, its meaning is determined by its context, the rules of grammar and common usage. A word or phrase that has acquired a technical or particular meaning in a particular context has that meaning if it is used in that context." NMSA 1978, § 12–2A–2 (1997). Some courts have turned to dictionary definitions of the word "income" in order to address similar arguments, defining income as "a gain or recurrent benefit usu[ally] measured in money that derives from capital or labor." *Lucero v. Comm'r of Revenue*, No. 7404 R, 2002 WL 1732987, at *3 (Minn. T.C. July 24, 2002) (quotation

marks and quoted authority omitted) (alteration in original). "Wages, by common definition, constitute payment for employment services.... *See, e.g., Black's Law Dictionary* 766, 1573 (7th ed.1999) (defining 'income' as 'payment that one receives ... from employment' and 'wage' as 'Payment for labor or services')." *Snyder v. Ind. Dep't of State Revenue,* 723 N.E.2d 487, 490 (Ind. T.C.2000) (citation omitted) (second omission in original), *cert. denied,* 735 N.E.2d 233 (Ind.2000). Finally, as discussed below, "income" is an extremely broad term defined by context. Income, in the context of taxes, includes within its definition employment wages and salaries, as well as "gains derived from dealings in property," interest, rents, and royalties, among many other categories. Section 61.

{13} The taxpayers do not cite any on point cases for their claim that an individual's employment wages are not subject to income tax. We do not find such authority. *See, e.g., United States v. Connor,* 898 F.2d 942, 943 (3rd Cir.1990) ("Every court which has ever considered the issue has unequivocally rejected the argument that wages are not income."); *Hill v. United States,* 599 F.Supp. 118, 121 (M.D.Tenn.1984) ("[N]o Court of the land has ever held or suggested that the Congress could not tax constitutionally wages as income."); *Combs,* 14 P.3d at 586 (holding that wages are taxable income and stating that the court "discovered no federal administrative or judicial authority to the contrary").

{14} In their petition to this Court, the taxpayers make no attempt to refute the overwhelming on point authority holding that employment wages are taxable income, including the numerous cases to which the hearing officer directed them. The United States Supreme Court, as well as every circuit of the United States Court of Appeals, has recognized that employment wages are taxable income. *E.g., Cheek v. United States,* 498 U.S. 192, 202, 111 S.Ct. 604, 112 L.Ed.2d 617 (1991) (recognizing the *"duty to file a return and to treat wages as income"* and holding that a good faith misconception is a defense to federal criminal charges of willfully failing to file a federal income tax return and willfully attempting to evade income taxes) (emphasis added);[3] *United States v. Gerads,* 999 F.2d 1255, 1256 (8th Cir.1993) (per curiam) (holding that "wages are within the definition of income under the Internal Revenue Code and the Sixteenth Amendment, and are subject to taxation"); *Connor,* 898 F.2d at 943–44 (same); *Grimes v. Comm'r,* 806 F.2d 1451, 1453 (9th Cir. 1986) (per curiam) (concluding that "Sections 1 and 61 of the Internal Revenue Code impose a tax on income, and wages are income"); *Casper v. Comm'r,* 805 F.2d 902, 904–05 (10th Cir.1986) ("Appellant's contention that the amounts he received from his employers constituted an equal, nontaxable exchange of property rather than taxable income is clearly without merit.... Value received in exchange for services constitutes taxable income pursuant to I.R.C. § 61(a)(1)."); *Coleman v. Comm'r,* 791 F.2d 68, 70 (7th Cir.1986) ("Wages are income, and the tax on wages is constitutional."); *Sullivan v. United States,* 788 F.2d 813, 815 (1st Cir.1986) (per curiam) (stating that "[c]ourts uniformly have rejected as frivolous the arguments that money received in compensation for labor is not taxable income"); *Mathes v. Comm'r,* 788 F.2d 33, 35 (D.C.Cir. 1986) (same); *Connor v. Comm'r,* 770 F.2d 17, 20 (2nd Cir.1985) (per curiam) ("The taxpayer next argues that wages are not income but an exchange of property. As money is property and labor is property, so his argu-

3. By referring to this case, we do not necessarily imply an acceptance of its holding regarding good faith belief as a defense in New Mexico. *See State v. Long,* 121 N.M. 333, 335, 911 P.2d 227, 229 (Ct.App.1995) ("New Mexico courts follow federal law only to the extent they find that law persuasive."); *see also State v. Martin,* 90 N.M. 524, 526, 565 P.2d 1041, 1043 (Ct.App. 1977) (rejecting the defendant's argument, based on federal law, "to require a higher standard of proof in terms of criminal intent in tax fraud cases"), *overruled on other grounds by State v. Wilson,* 116 N.M. 793, 796, 867 P.2d 1175, 1178 (1994). *See generally State v. Varela,* 1999 NMSC 045, ¶ 42, 128 N.M. 454, 993 P.2d 1280 ("Under New Mexico law, willful conduct is conscious or intentional conduct."); *State v. Rosaire,* 1997 NMSC 034, ¶ 7, 123 N.M. 701, 945 P.2d 66 ("Willfully denotes the doing of an act without just cause or lawful excuse.") (quotation marks and quoted authority omitted).

ment goes, his work for wages is a nontaxable exchange of property. Wrong again. Wages are income. The argument that they are not has been rejected so frequently that the very raising of it justifies the imposition of sanctions.") (citation omitted); *Perkins v. Comm'r*, 746 F.2d 1187, 1188 (6th Cir.1984) (per curiam) (holding that "gross income means all income from whatever source derived including compensation for services"); *Simanonok v. Comm'r*, 731 F.2d 743, 744 (11th Cir.1984) (per curiam) (rejecting a taxpayer's argument that "he had not received income because his paychecks were received in exchange for his costs and disbursements of labor"); *Parker v. Comm'r*, 724 F.2d 469, 471–72 (5th Cir.1984) (addressing income tax on wages, pensions, and capital gains, and noting "it seems incredible that we would again be required to hold that the Constitution, as amended, empowers the Congress to levy an income tax against any source of income, without the need to apportion the tax equally among the states, or to classify it as an excise tax applicable to specific categories of activities"); *Comm'r v. Mendel*, 351 F.2d 580, 582 (4th Cir.1965) (discussing permissible deductions and noting "that any economic or financial benefit conferred on an employee as compensation is gross income"). Many state courts, including Arizona, Hawaii, Idaho, Illinois, Indiana, Minnesota, Oregon, and Wisconsin, have also concluded that wages are taxable income. *E.g.*, *Arthur*, 734 P.2d at 100 (holding "[t]hat wages are income for tax purposes"); *Rhoads v. Okamura*, 98 Hawai'i 407, 49 P.3d 373, 381 (2002) (*"Taxpayers here had no reasonable basis to believe that wages were not properly subject to income taxes given the universal and longstanding rejection of this argument."*) (quoted authority omitted) (emphasis added in original); *Idaho State Tax Comm'n v. Payton*, 107 Idaho 258, 688 P.2d 1163, 1164 (1984) ("The fact that wages constitute income is settled law."); *People v. Wendt*, 183 Ill.App.3d 389, 132 Ill.Dec. 205, 539 N.E.2d 768, 777 (1989) (same); *Snyder*, 723 N.E.2d at 490–91 (same); *Lucero*, 2002 WL 1732987, at *3 (same); *Combs*, 14 P.3d at 586 ("Federal courts repeatedly have rejected, as frivolous and without basis in the Code, the argument made here by taxpayer that wages are

not taxable income."); *Tracy v. Wis. Dep't of Revenue*, 133 Wis.2d 151, 394 N.W.2d 756, 759 (1986) (rejecting the argument that wages are not taxable income and holding that "today's tax laws empower the State of Wisconsin to tax 'all income,' no matter from what source it may be derived").

{15} Rather than address on point authority that the hearing officer directed to taxpayers, they instead reiterate to this Court arguments soundly rejected by the hearing officer as well as the Court of Appeals. The taxpayers assert that "income" is not defined by the federal tax code, relying on *United States v. Ballard*, 535 F.2d 400 (8th Cir.1976). First, *Ballard* addressed business losses and does not support taxpayers' argument that employment wages are not taxable. 535 F.2d at 403. Second, while *Ballard* does state that "[t]he general term 'income' is not defined in the Internal Revenue Code," *Ballard* next observes that "Section 61 of the Code defines 'gross income' to mean all income from whatever source derived, including (but not limited to) the following items: (1) Compensation for services, including fees, commissions, and similar items; (2) Gross income derived from business; … (5) Rents[.]" *Id.* at 404 (citation omitted) (alteration and omission in original).

{16} The taxpayers argue that "Congress can not [sic] define 'income,'" relying on *Eisner v. Macomber*, 252 U.S. 189, 206, 40 S.Ct. 189, 64 L.Ed. 521 (1920). They appear to argue that Congress cannot give the term income a broader meaning than that used in the Sixteenth Amendment to the United States Constitution. *Eisner*, however, does not support the taxpayer's argument that Section 61(a) violates the Sixteenth Amendment. *Connor*, 898 F.2d at 943 (rejecting a similar argument and stating that *Eisner* is "a case patently inapposite because it held merely that a stock dividend made to shareholders in their proportionate interests against profits accumulated by the corporation was not income"). *Eisner* addressed "the question whether, by virtue of the Sixteenth Amendment, Congress has the power to tax, as income of the stockholder and without apportionment, a stock dividend made lawfully and in good faith against prof-

its accumulated by the corporation." 252 U.S. at 199, 40 S.Ct. 189. *Eisner* relied on the meaning of income "as used in common speech" and defined income, for the purposes of stock dividends, as "the gain derived from capital, from labor, or from both combined." *Id.* at 207, 40 S.Ct. 189 (quotation marks and quoted authority omitted). As discussed below, this broad definition includes as income a gain derived from labor; nothing in *Eisner* suggests that employment wages are excluded from any definition of income. *See Snyder,* 723 N.E.2d at 490 ("The Court in *Eisner* did not discuss what constituted a 'gain derived from labor.' However, by analogy to the Court's treatment of 'gain derived from capital,' one could reasonably surmise that the Court in *Eisner* would have viewed wages as representing the 'gain' or 'profit' independent and separate from the labor an individual provided in exchange for his or her wages."). The Third Circuit Court of Appeals, in rejecting this type of argument, articulated:

> As the Supreme Court later explained in *Commissioner v. Glenshaw Glass Co.,* 348 U.S. 426, 430–31, 75 S.Ct. 473, 99 L.Ed. 483 (1955), the *Eisner* Court held that the distribution of a corporate stock dividend changed only the form of the taxpayer's capital investment, and that because the taxpayer received nothing out of the company's assets for his separate use and benefit, the distribution was not a taxable event. *Glenshaw* reiterated that Congress intended to use the full measure of its taxing power in creating the income tax.

*Connor,* 898 F.2d at 943. The Supreme Court stated that the definition of income in *Eisner* "was not meant to provide a touchstone to all future gross income questions." *Glenshaw,* 348 U.S. at 431, 75 S.Ct. 473. In sum, "[n]either *Eisner* nor *Glenshaw Glass* stands for the proposition that wages are not income." *Snyder,* 723 N.E.2d at 490. "[Section 61(a)] is in full accordance with Congressional authority under the Sixteenth Amendment to the Constitution to impose taxes on income without apportionment among the states." *Perkins,* 746 F.2d at 1188.

{17} The taxpayers argue that income "can only mean a corporate profit," relying on several cases from the United States Supreme Court, and that Sections 61 and 62 do not distinguish between individuals and corporations. *See Doyle v. Mitchell Bros.,* 247 U.S. 179, 185, 38 S.Ct. 467, 62 L.Ed. 1054 (1918) ("Whatever difficulty there may be about a precise and scientific definition of 'income,' it imports, as used here, ... the idea of gain or increase arising from corporate activities."). As the hearing officer decided, *Doyle* refers solely to the issue before it: whether the company's gain from the sale of capital assets was subject to the corporation income tax. *Doyle* therefore does not aid the taxpayers.

{18} The taxpayers argue that *Merchants' Loan & Trust Co. v. Smietanka,* 255 U.S. 509, 41 S.Ct. 386, 65 L.Ed. 751 (1921) supports their claim that, because the Supreme Court equated income under the Income Tax Act with income under the Corporation Excise Tax Act, only corporate profits are taxable. *See id.* at 519, 41 S.Ct. 386 ("[T]here would seem to be no room to doubt that the word [income] must be given the same meaning in all of the Income Tax Acts of Congress that was given to it in the Corporation Excise Tax Act, and that what that meaning is has now become definitely settled by decisions of this Court."). Again, the hearing officer responded to this argument. The definitively settled definition to which the Court referred was that income means " 'the gain derived from capital, from labor, or from both combined.' " *Id.* (quoting *Stratton's Independence, Ltd. v. Howbert,* 231 U.S. 399, 415, 34 S.Ct. 136, 58 L.Ed. 285 (1913)). *Eisner* also relied on this definition of income and noted that it includes "profit gained through a sale or conversion of capital assets." 252 U.S. at 207, 40 S.Ct. 189. The Supreme Court did not hold, in *Smietanka,* that "income" is limited to corporate profits. Indeed, the tax in that case was assessed against a trust fund established in a will by an individual. *Smietanka,* 255 U.S. at 514–15, 41 S.Ct. 386. The Supreme Court noted that the trustee was a "taxable person" within the meaning of the Income Tax Act and was "subject to all the provisions of [the Act] which apply to individuals." *Id.* at 516, 41

S.Ct. 386 (quotation marks and quoted authority omitted). The Court further noted that the income of the trust would be treated "as if the beneficiaries[, being a widow and her four children,] had received it in person." *Id.* at 517, 41 S.Ct. 386. Clearly, the Court contemplated the application of its definition of the word "income" to individuals.

{19} The taxpayers claim that the wages they earned from their employment are not a profit or gain which can be taxed; instead it is an "equal exchange of funds for services." As recognized by the hearing officer, this argument has been rejected by numerous courts. *See, e.g., United States v. Buras,* 633 F.2d 1356, 1361 (9th Cir.1980) (rejecting the argument by a taxpayer that because "the wage earner exchanges his [or her] labor and personal time for its equivalent in money, he [or she] derives no gain and therefore cannot be taxed"); *United States v. Lawson,* 670 F.2d 923, 925 (10th Cir.1982) ("The defendant's wages for personal services are income under the Internal Revenue Code.... Notwithstanding [his] belief that his wages are not gains or profits but merely what he has received in an equal exchange for his services, the Internal Revenue Code clearly includes compensation of this nature within reportable gross income."). We join these courts in rejecting this proposition. *See Lucas v. Earl,* 281 U.S. 111, 114, 50 S.Ct. 241, 74 L.Ed. 731 (1930) (concluding that, based on an earlier version of the federal tax code, "[t]here is no doubt that the statute could tax salaries to those who earned them"); *Howbert,* 231 U.S. at 415, 34 S.Ct. 136 (noting that "the earnings of the human brain and hand when unaided by capital" are treated as income).

{20} The New Mexico Legislature has imposed a tax "upon the net income of every resident individual and upon the net income of every nonresident individual employed or engaged in the transaction of business in, into or from this state, or deriving any income from any property or employment within this state." Section 7-2-3. We conclude, along with apparently every court which has addressed the issue, that employment wages are taxable income. Thus, the employment wages earned by the taxpayers

are subject to our state income tax. As the hearing officer decided, "[t]here really is no question that the Taxpayers' compensation for personal services performed in New Mexico come within the definition of 'gross income' in IRC Section 61 and are subject to both federal and state income tax." The hearing officer noted that "[t]he [t]axpayers appear to be intelligent people who are sincere in their beliefs. Nonetheless, those beliefs are clearly wrong." With this opinion, this Court makes plain our holding that employment wages are income subject to tax and that, considering the universal rejection of similar arguments, these arguments are frivolous. *E.g., Cheek,* 498 U.S. at 209–10, 111 S.Ct. 604 (Blackmun, J., dissenting) ("[I]t is incomprehensible ... how, in this day, more than [seventy] years after the institution of our present federal income tax system, ... any taxpayer of competent mentality can assert as his [or her] defense to charges of statutory wilfulness the proposition that the wage he [or she] receives for his [or her] labor is not income, irrespective of a cult that says otherwise and advises the gullible to resist income tax collections."); *Clark v. Dep't of Revenue,* 332 Or. 236, 26 P.3d 821, 822 (2001) (en banc) (per curiam) ("Taxpayer's views concerning the voluntary nature of the income tax system and the nontaxability of wages paid by private employers for an individual's labor, however honestly held, are so incorrect as to render legal arguments based on them frivolous."); *Coleman,* 791 F.2d at 69 ("Some people believe with great fervor preposterous things that just happen to coincide with their self-interest.... The government may not prohibit the holding of these beliefs, but it may penalize people who act on them.").

## C. The Department's Authority to Determine Tax Liability

{21} The taxpayers argue that the Department had no authority to recalculate their taxable income. The taxpayers claim that they "correctly and legally filled out their federal return" and that they used the taxable amount, zero, on their state return, thus correctly completing the state return. The hearing officer described the position of the taxpayers as follows: "[U]ntil the Inter-

nal Revenue Service makes an adjustment to the Taxpayers' 1999 federal income tax return, the Department is bound to accept the zero federal adjusted gross reported on the Taxpayers' return." The taxpayers cite no authority for their position.

{22} The taxpayers assert that the Department "is only 'authorized to examine' records [NMSA 1978, § 7–1–4(A) (1986)] not to 'judge the correctness' ... of Plaintiffs' federal adjusted gross income." We reject these arguments. Again, the taxpayers fail to read the statutory provision in full.

> For the purpose of establishing or determining the extent of the liability of any person for any tax, for the purpose of collecting any tax or for the purpose of enforcing any statute administered under the provisions of the Tax Administration Act, the secretary or the secretary's delegate is authorized to examine ... and require the production of any pertinent records, books, information or evidence, to require the presence of any person and to require that person to testify under oath concerning the subject matter of the inquiry and to make a permanent record of the proceedings.

NMSA 1978, § 7–1–4(A) (1986) (emphasis added); cf. NMSA 1978, § 7–1–11(D) (2001) ("If the taxpayer's records and books of account do not exist or are insufficient to determine the taxpayer's tax liability, if any, the department may use any reasonable method of estimating the tax liability, including but not limited to using information about similar persons, businesses or industries to estimate the taxpayer's liability."). Thus, we agree with the Court of Appeals' holding that, by statute, the Department has the authority to examine records in order to determine the extent of the taxpayers' liability to pay state income tax. Holt, NMCA 22,622, at 5; cf. Torridge Corp. v. Comm'r of Revenue, 84 N.M. 610, 612, 506 P.2d 354, 356 (Ct.App. 1972) ("We deem [an earlier version of Section 7–1–4(A)] not only as authority to examine pertinent books and records for the purpose of verification but also as authority to reconstruct records when they are destroyed.").

{23} As the hearing officer determined, calculation of the taxpayers' state income tax is based upon their adjusted gross income as defined in Section 7–2–2(A), and this amount is not limited to the figure the taxpayers chose to report as their adjusted gross income on their federal return. The taxpayers maintain that they did not make any errors on the federal tax form. We disagree. "[T]ax statutes normally are such that the taxpayer has the obligation of self-declaration of any incident which has a tax consequence." Martin, 90 N.M. at 526, 565 P.2d at 1043. The taxpayers' federal form, viewed in light of their W–2 forms, was incorrect on its face. "[T]he system of self-assessment is the basis of our American scheme of income taxation and the duty of the taxpayer to self-assess is not met unless the return is properly filled out in its entirety." Kahn v. United States, 753 F.2d 1208, 1213 (3rd Cir.1985) ("Although the return in this instance contained sufficient information for the IRS to judge the correctness of the self-assessment and to recalculate and assess the tax properly owed after it disallowed the war tax credit, the return filled out by the taxpayer was also plainly incorrect in its statement of allowable credits, the total tax and amount to be refunded."); Weed, 489 N.W.2d at 528 ("Appellant's return is not correct.... By claiming a refund of all withholdings, appellant directly contradicts that part of his return showing that he owed taxes."). The taxpayers also assert, without authority, that "[o]nly the Federal Government can 'judge' federal statutes and judge the correctness of [their] federal adjusted gross income." We do not purport to enforce the collection of federal taxes or adjudge the taxpayers' liability to the federal government. Instead, we must apply New Mexico law as articulated by the Legislature. The incorporation of federal law by reference to Section 62 requires an analysis of federal law in order to effectuate the intent of our Legislature for purposes of state taxation. In other words, our statutes require, for purposes of determining state tax liability, the taxpayers' correct federal adjusted gross income. In rejecting a taxpayer's argument that only the United States Supreme Court

could adjudicate their claim, the Wisconsin Court of Appeals recognized that

the court's original jurisdiction under art. III, sec. 2, is not exclusive. *United States v. California*, 297 U.S. 175, 187, 56 S.Ct. 421, 80 L.Ed. 567 (1936); *Bors v. Preston*, 111 U.S. 252, 261, 4 S.Ct. 407, 28 L.Ed. 419 (1884). We note, too, that the tenth amendment reserves to the states '[t]he powers not delegated to the United States . . . nor prohibited by [the Constitution] to the States.' The adoption of tax laws, and the creation of quasi-judicial agencies to administer them, is neither delegated to congress nor prohibited to the states by the constitution.

*Tracy*, 394 N.W.2d at 758 (alterations in original).

{24} The Court of Appeals concluded, "If Taxpayers were permitted to repeat on state tax forms an error committed on their federal forms, then those taxpayers who evade their federal income taxes would be free, without considering criminal sanctions, to evade state tax obligations as well. We will not attribute such an illogical intent to the New Mexico Legislature when it drafted Section 7-2-2." *Holt*, NMCA 22,622, at 5–6 (citation omitted). We agree. It would be untenable for this Court to hold that the Department is bound by a taxpayer's obvious miscalculation on a federal tax form that is directly contradicted by required documentary evidence, specifically, the W 2 forms. *Cf. Torridge*, 84 N.M. at 613, 506 P.2d at 357 ("The taxpayers' position would have the effect of foreclosing any investigation of potential tax liability once a taxpayer asserts the records presented by him [or her] were accurate.").

### III. Conclusion

{25} We hold that employment wages are taxable income for purposes of New Mexico state income tax. We also conclude that the Department has the authority to examine information or evidence in order to determine or establish an individual's tax liability.

{26} **IT IS SO ORDERED.**

WE CONCUR: GENE E. FRANCHINI, PAMELA B. MINZNER, PETRA JIMENEZ MAES, and PAUL J. KENNEDY, Justices.