This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

### IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-41821**

**MARY ELIZABETH BONNEY,**

Protestant-Appellant,

v.

**NEW MEXICO TAXATION
AND REVENUE DEPARTMENT,**

Respondent-Appellee.

**APPEAL FROM THE ADMINISTRATIVE HEARINGS OFFICE
Brian VanDenzen, Chief Hearing Officer**

Mary Elizabeth Bonney
Las Cruces, NM

Pro Se Appellant

Raúl Torrez, Attorney General
Christopher N. Orton, Special Assistant Attorney General
Santa Fe, NM

for Appellee

### MEMORANDUM OPINION

**DUFFY, Judge.**

**{1}** Taxpayer Mary Elizabeth Bonney, a self-represented litigant, appeals from a decision and order affirming the New Mexico Taxation and Revenue Department's (the Department) tax assessments for January 1, 2016, through December 31, 2019. Taxpayer contends that the administrative hearing officer (AHO) erred in (1) concluding that Taxpayer was required, but failed, to file state tax returns; (2) concluding that Taxpayer had taxable adjusted gross income; (3) concluding that the Department's assessment was not barred by the applicable statute of limitations; and (4) upholding

the Department's civil negligence penalty and accrued interest for Taxpayer's failure to timely pay taxes in violation of NMSA 1978, Section 7-1-69 (2021). Having reviewed the record and considered the arguments raised in this appeal, we affirm the AHO's decision and order.

## DISCUSSION

**{2}** "In reviewing the AHO's decision, we apply a whole-record standard of review." *Gemini Las Colinas, LLC v. N.M. Tax'n & Revenue Dep't*, 2023-NMCA-039, ¶ 11, 531 P.3d 622 (internal quotation marks and citation omitted). "An appellate court may set aside a decision by the Taxation and Revenue Department hearing officer only if it is arbitrary, capricious, or an abuse of discretion, if it is not supported by substantial evidence in the record, or if it is otherwise not in accordance with the law." *Holt v. N.M. Dep't of Tax'n & Revenue*, 2002-NMSC-034, ¶ 4, 133 N.M. 11, 59 P.3d 491.

## I. The AHO Did Not Err in Concluding That Taxpayer Was Required to File State Income Tax Returns

**{3}** NMSA 1978, Section 7-2-12(A) (2016) requires "[e]very resident of this state . . . not exempt from tax under the Income Tax Act who is required by the laws of the United States to file a federal income tax return" to file a "complete tax return with the [D]epartment." Taxpayer argues that the AHO erred in determining that she was required to file state income tax returns and pay state income tax because, according to Taxpayer, she had zero adjusted gross income under federal law and no federal income tax liability, and was therefore not required to file federal returns.

**{4}** It is undisputed that Taxpayer was a salaried employee who received W-2 and 1099 income statements, and these documents showed that Taxpayer received taxable income for each tax year at issue in this appeal. Notwithstanding this evidence, Taxpayer claims that the federal government, based on filings submitted by Taxpayer, determined that she had no federal adjusted gross income in the relevant tax years, and therefore, Taxpayer was not required to file a tax return. Relying on these supposed federal determinations, Taxpayer argues that she was not required to file a state personal tax return because state personal income is keyed to the federal adjusted gross income reported to the Internal Revenue Service.

**{5}** This very argument was addressed in our Supreme Court's opinion in *Holt*, 2002-NMSC-034, ¶ 24. *Holt* states in no uncertain terms that a taxpayer's incorrect report of $0 income to the federal government does not prevent the state from determining the correct amount of income by relying on unchallenged W-2 and 1099 reports and assessing the taxpayer for unpaid state taxes. The Supreme Court noted in *Holt* that

> [i]f Taxpayers were permitted to repeat on state tax forms an error committed on their federal forms, then those taxpayers who evade their federal income taxes would be free, without considering criminal sanctions, to evade state tax obligations as well. We will not attribute such

an illogical intent to the New Mexico Legislature when it drafted Section 7-2-2. . . . It would be untenable for this Court to hold that the Department is bound by a taxpayer's obvious miscalculation on a federal tax form that is directly contradicted by required documentary evidence, specifically, the W[-]2 forms. *Cf. Torridge* [*Corp. v. Comm'r of Revenue*], [1972-NMCA-171, ¶ 17,] 84 N.M. [610], 506 P.2d [354] ("The taxpayers' position would have the effect of foreclosing any investigation of potential tax liability once a taxpayer asserts the records presented by him [or her] were accurate.").

*Holt*, 2002-NMSC-034, ¶ 24 (internal quotation marks and citation omitted).

{6}     The AHO in this case rejected Taxpayer's position that she had no tax liability, finding that Taxpayer had engaged in a "default tactic" in an effort to undermine the taxability of her income, that Taxpayer's "default tactic" had no basis in law, and that the Department was not bound by Taxpayer's incorrect reporting. In particular, the AHO found that despite admitting that she saw no error in the amounts reported on her W-2s and 1099s, Taxpayer submitted a series of documents entitled "verified challenges," "verified affidavits," and "verified affidavits of default" to each of the entities that issued her a W-2 or 1099. In these documents, Taxpayer first demanded answers about the nature of the income reported on each form and on its taxability. She told the entities that a failure to answer would constitute a legally binding admission that the income reported was not taxable. When none of the issuing agencies responded, Taxpayer treated the lack of response as an admission that none of her income was taxable. She prepared and submitted affidavits, along with a document entitled "6201 Request for Determination and Return of Tax" to the IRS, claiming that the entities that issued her W-2s and 1099s had admitted that the income reported was inaccurate and fraudulent, and requested that the IRS determine Taxpayer's federal tax liability. The AHO found that "[b]ecause of Taxpayer's federal procedural machinations, Taxpayer [was able to] produce[] IRS transcripts showing zero reported federal adjusted gross income despite the W-2s and 1099s clearly showing significant taxable income in each respective year."

{7}     Taxpayer contests on appeal the AHO's characterization of her "verified challenges" and "verified affidavits" as a "default tactic," and the AHO's characterization of her 6201 requests as "purported return letters," a substitute for a 1040 federal tax report form. Taxpayer, however, has not shown that her "verified challenges" and "verified affidavits" have any basis in law. Nor has she challenged the AHO's finding of fact that Taxpayer's tax preparer (who is Taxpayer's partner) "had no doubt as to the accuracy of the information provided on" Taxpayer's W-2s, and "neither Taxpayer nor [her tax preparer] identified any alleged facial information errors on any of the 1099s provided during the relevant period." Given the absence of a legal basis for the procedure employed by Taxpayer prior to filing her 6201 requests, along with Taxpayer's failure to identify any genuine dispute as to the accuracy of the information contained in her W-2s or 1099s, we cannot conclude that the AHO's characterizations were unsupported by substantial evidence or otherwise amount to an abuse of discretion.

**{8}** Further, substantial evidence supports the AHO's conclusion that Taxpayer was required to file New Mexico tax returns. Taxpayer argues that if she was not required to file a federal return, she was not required to file a state tax return. *See* § 7-2-12(A). However, Taxpayer has not demonstrated that the AHO erred in concluding that Taxpayer was, in fact, required to file a federal return. On the one hand, the AHO received evidence that the IRS sent Taxpayer three notices that she failed to file federal 1040 returns in years where it appeared she had taxable income. On the other, the AHO pointed out that Taxpayer contends she did, in fact, file federal returns in the form of the 6201 requests, which, at a minimum, constitute "direct evidence that Taxpayer in fact filed incorrect federal returns, triggering the New Mexico return requirement under Section 7-2-12." In either event, Taxpayer has not demonstrated that the AHO erred in concluding that Taxpayer was required to file federal tax returns, and was therefore also required to file state tax returns.

**{9}** For all of these reasons, we conclude the AHO's determination that Taxpayer was required to file New Mexico state income tax returns was not arbitrary, capricious, or otherwise an abuse of discretion.

## II. Taxpayer Has Not Demonstrated That the Assessment Was Incorrect

**{10}** As for Taxpayer's argument that she had no federal tax *liability*, we agree with the AHO's determination that the Department need not rely on Taxpayer's exhibits showing that Taxpayer had no adjusted gross income. The AHO found that these documents were the product of Taxpayer's own reporting to the IRS. The AHO correctly observed that the Department could rely on the information reported in Taxpayer's W-2s and 1099s—information that was not challenged by Taxpayer on any legitimate basis—to determine that Taxpayer was required to file a New Mexico personal income tax return. *See Holt*, 2002-NMSC-034, ¶¶ 1, 21-24 (affirming that the department has the independent authority to determine a New Mexico taxpayer's tax liability).

**{11}** Taxpayer argues that under *Holt*, the Department may make tax liability determinations only when the taxpayer's records are "insufficient to determine the taxpayer's liability." *See Holt*, 2022-NMSC-034, ¶ 22. *Holt*, however, was not so narrow. Our Supreme Court held that the Department (1) "has the authority to examine records in order to determine the extent of the taxpayers' liability to pay state income tax," and (2) "is not limited to the figure the taxpayers chose to report as their adjusted gross income on their federal return." *Id.* ¶¶ 22-23; *see Getty Oil Co. v. N.M. Tax'n & Revenue Dep't*, 1979-NMCA-131, ¶ 9, 93 N.M. 589, 603 P.2d 328 (recognizing that New Mexico income tax reporting provisions are linked to the federal government for the convenience of the taxpayer, but do not obligate the department to accept federal return information). To the extent Taxpayer contends *Holt* was incorrectly decided, we are not at liberty to depart from our Supreme Court's precedents. *See State v. Mares*, 2024-NMSC-002, ¶ 34, 543 P.3d 1198 (stating that "vertical stare decisis, as recognized in the *Alexander* doctrine, requires absolute fealty to [the Supreme] Court's precedents by the Court of Appeals").

**{12}** To the extent Taxpayer also argues that the Department's assessment was incorrect (for the same reasons), we will assume without deciding, as the AHO did, that Taxpayer overcame the presumption of correctness and consider only the AHO's ultimate decision on the merits, again under the well-established standard of review set forth in *Gemini*, 2023-NMCA-039, ¶¶ 15, 26-30.

**{13}** In his decision and order, the AHO found that although Taxpayer had produced nearly one hundred exhibits, none of the evidence "tend[ed] to *dispute* the factual correctness of the assessment." *See* 3.1.6.12 NMAC. The AHO considered, but ultimately declined to credit, Taxpayer's evidence in support of her claim that she had no federal adjusted gross income nor any obligation to file federal tax returns because that evidence was a product of Taxpayer's "affidavit and default tactic" and Taxpayer's decision to not report any taxable income. Instead, the AHO concluded that the Department's evidence, including the W-2s and 1099s, demonstrated that Taxpayer had taxable income, and affirmed the Department's use of the information set forth in those tax documents as the basis for the Department's assessment. As the AHO observed, "Taxpayer did not expressly argue during the protest that the employment wages at issue were not taxable, instead simply claiming that [she] had questions about the taxability of the income that none of the reporting entities, the IRS, or the Department would answer in response to Taxpayer's created affidavit and default tactic." The same is true on appeal. Nowhere in her briefing does Taxpayer contest the information presented in the W-2s and 1099s, nor does Taxpayer provide a specific rationale for why those forms do not accurately represent Taxpayer's wages and income or why the reported income is not taxable. *See Gemini*, 2023-NMCA-039, ¶ 21 (requiring the taxpayer "to *produce* evidence that presents a factual dispute about the accuracy of the assessment"). Ultimately, it was for the AHO, acting as a fact-finder, to consider and weigh the evidence presented by the parties. For the reasons set forth above, we do not agree with Taxpayer that the AHO erred in declining to credit her evidence, or that the Department's evidence does not otherwise support the AHO's decision to affirm the Department's assessment. Put differently, Taxpayer has not demonstrated that the AHO erred in concluding that the Department met its burden of production or in concluding that Taxpayer did not meet her burden of persuasion. *See id.* ¶ 29.

### III. The AHO Did Not Err in Denying Taxpayer's Motion to Dismiss on Statute of Limitations Grounds

**{14}** During the hearing, Taxpayer filed a motion to dismiss the assessment on statute of limitations grounds. Taxpayer renews this argument on appeal. We understand Taxpayer to contend that the AHO should have applied the general three-year limitation period set forth in NMSA 1978, Section 7-1-18(A) (2021), instead of the seven-year statute of limitations in Section 7-1-18(C), which applies when a taxpayer fails "to complete and file any required return." Because we have already affirmed the AHO's findings and conclusion that Taxpayer was required, but failed, to file state income tax returns, we agree with the AHO's conclusion that the seven-year limitation period applies here. *See Hess Corp. v. N.M. Tax'n & Revenue Dep't*, 2011-NMCA-043, ¶ 25, 149 N.M. 527, 252 P.3d 751 (holding that the district court's conclusion that the

taxpayer "did not prepare or file any tax forms with the Department" was sufficient to apply Section 7-1-8(C) (alteration and internal quotation marks omitted)). Consequently, the Department had "seven years from the end of the calendar year in which the tax was due" to issue an assessment. *See* § 7-1-18(C). As the AHO correctly noted, the Department issued a tax assessment for 2016-19 on January 12, 2023, which is within seven years of December 31, 2017, i.e., the relevant end of the calendar year date of the oldest tax period at issue (2016). It follows that the assessments for 2017, 2018, and 2019 were therefore also timely issued. Accordingly, the Department was not barred from assessing Taxpayer for the years 2016, 2017, 2018, and 2019.

## IV. The AHO Did Not Err in Upholding the Civil Penalty and Accrued Interest on the Assessment

**{15}** Lastly, Taxpayer challenges the AHO's findings upholding the Department's assessment of a civil negligence penalty and accrued interest. Section 7-1-69(A) mandates the imposition of a civil penalty when a taxpayer fails to pay taxes due to the State because of negligence or disregard of Department rules and regulations. However, "[n]o penalty shall be assessed against a taxpayer if the failure to pay an amount of tax when due results from a mistake of law made in good faith and on reasonable grounds." Section 7-1-69(B). Taxpayer argues that the AHO erred in concluding that the good faith exception to the civil negligence penalty did not apply in this case.

**{16}** Here, too, Taxpayer's argument relies primarily on the premise that Taxpayer did not have adjusted gross income and was not required to file federal tax returns. Having already affirmed the AHO's rejection of both contentions, we likewise reject these arguments as a basis to overturn the interest and penalty assessment.

**{17}** Taxpayer also contends that she is entitled to the good faith exception because she "exceeded the ordinary care and prudence that the uncommon circumstance demanded" by sending affidavits to various agencies requesting verification of Taxpayer's tax information, inquiring about her tax information with the Department, and relying on alleged IRS determinations that Taxpayer had zero federal tax liability. The AHO considered each of these arguments and concluded that "[t]his was not a genuine, good-faith dispute, but a manufactured challenge using Taxpayer's unsupported affidavit and default tactic against documents acknowledged to be facially correct." In particular, the AHO noted the absence of legal authority for Taxpayer's affidavit and default procedure, that Taxpayer failed to facially challenge the accuracy of the basic information listed in the W-2s and 1099s issued to her by various entities, and that Taxpayer provided no evidence that she "relied on any informed consultation in deciding not to pay [her] taxes." *See C & D Trailer Sales v. N.M. Tax'n & Revenue Dep't*, 1979-NMCA-151, ¶ 9, 93 N.M. 697, 604 P.2d 835; *see also* 3.1.11.11(D) NMAC (indicating that a taxpayer has not been negligent where taxpayer proves that the failure to pay taxes "was caused by reasonable reliance on the advice of competent tax counsel or accountant as to the taxpayer's liability after full disclosure of all relevant facts").

Taxpayer has not addressed these bases for the AHO's decision and has therefore failed to demonstrate that the AHO's decision was arbitrary and capricious.

**{18}** As for the AHO's determination that Taxpayer is liable for interest on the assessment, Taxpayer's contrary argument relies exclusively on the premise that there is no amount of tax properly imposed. Having rejected the premise of this argument, we perceive no error in the AHO's determination. *See* NMSA 1978, § 7-1-67(A) (2013) ("If a tax imposed is not paid on or before the day on which it becomes due, interest shall be paid to the state on that amount from the first day following the day on which the tax becomes due . . . until it is paid.").

**CONCLUSION**

**{19}** For the above and foregoing reasons, we affirm the AHO's decision and order.

**{20}   IT IS SO ORDERED.**

**MEGAN P. DUFFY, Judge**

**WE CONCUR:**

**JACQUELINE R. MEDINA, Chief Judge**

**JANE B. YOHALEM, Judge**