2007-NMCA-071

161 P.3d 905

**Jo Ann STOCKTON and Brooky Stockton, Appellants,**

v.

**State of NEW MEXICO TAXATION AND REVENUE DEPARTMENT and Margaret B. Alcock, Hearing Officer for Taxation and Revenue Department, Appellees.**

No. 26,041.

Court of Appeals of New Mexico.

April 20, 2007.

Jo Ann Stockton, Brooky Stockton, Cedar Crest, NM, Pro se Appellants.

Gary K. King, Attorney General, Elizabeth K. Korsmo, Special Assistant Attorney General, Santa Fe, NM for Appellees.

## OPINION

PICKARD, Judge.

{1} Pro se Appellants, Jo Ann and Brooky Stockton (Taxpayers), appeal from an administrative decision and order denying their protest of a tax lien filed by the New Mexico Taxation and Revenue Department (Department). Taxpayers raise several technical challenges to the manner in which the Department obtained and utilized Ms. Stockton's federal income tax information. Taxpayers also challenge the authority of the Department's hearing officer with respect to oath-of-office and surety-bond requirements. Concluding that Taxpayers' arguments are without merit, we affirm.

## BACKGROUND

{2} This appeal arises from a state tax liability assessed by the Department in the amount of $565.95. In the 1999 tax year, Ms. Stockton reported zero taxable income to the Internal Revenue Service (IRS). The IRS subsequently adjusted her income to $17,-153.00—an amount representing wages paid to Ms. Stockton as reported by NCES of New Mexico, Inc.

{3} In 2003, the IRS provided the Department with Ms. Stockton's tax information for the 1999 tax year. The information was provided via federal form 4549; which is titled "Income Tax Examination Changes," and is commonly known as a Revenue Agent's Report (RAR). The form indicated that Ms. Stockton had initially reported zero taxable income to the IRS and that the IRS had subsequently adjusted her income based on information obtained from her employer. The form also indicated that the IRS had assessed a tax liability against Ms. Stockton.

{4} Based on the information provided by the IRS, the Department determined that Ms. Stockton did not file a 1999 New Mexico personal income tax return reporting the taxable income indicated on the RAR. As such, the Department informed Ms. Stockton that it was assessing her for $330.00 of New Mexico personal income tax, plus $33.00 in penalties and $202.95 in interest accrued to the date of assessment.

{5} On June 16, 2004, Ms. Stockton mailed a written protest of the assessment. In her

protest, Ms. Stockton claimed that she was entitled to an abatement of the assessed tax liability because she was unable to determine whether the amount assessed was accurate, since the Department had not provided her with a copy of the RAR. After receiving a copy of the RAR, Ms. Stockton supplemented her protest, arguing that the RAR was invalid because it was not signed and because the information contained in the RAR was hearsay.

{6} On January 20, 2005, the Department issued a notice of claim of tax lien against Taxpayers (the lien against Mr. Stockton was later released). Taxpayers subsequently filed a petition and a number of additional documents seeking to abate or dismiss the claim of lien. In their multiple filings, Taxpayers argued that the lien was unlawful, that various Department employees had failed to obtain faithful performance bonds and were therefore misrepresenting themselves as public employees, that the Department had violated federal law in obtaining Ms. Stockton's federal tax information, and that Ms. Stockton was not subject to federal income tax liability. Taxpayers did not argue below, and do not argue on appeal, that Ms. Stockton did not earn wages in New Mexico in the amount claimed by the Department during the year at issue.

{7} Following a hearing, the administrative hearing officer issued a detailed decision and order addressing each of Taxpayers' arguments and denying Taxpayers' protest. This appeal followed.

## STANDARD OF REVIEW

{8} An appellate court may only reverse a decision by a hearing officer of the Department if the decision is "(1) arbitrary, capricious or an abuse of discretion; (2) not supported by substantial evidence in the record; or (3) otherwise not in accordance with the law." NMSA 1978, § 7–1–25(C) (1989); *see Holt v. N.M. Dep't of Taxation & Revenue*, 2002–NMSC–034, ¶ 4, 133 N.M. 11, 59 P.3d 491; *Siemens Energy & Automation, Inc. v. N.M. Taxation & Revenue Dep't*, 119 N.M. 316, 317–18, 889 P.2d 1238, 1239–40 (Ct.App. 1994). In reviewing the hearing officer's decision, we will presume that "[a]ny assessment of taxes or demand for payment made

by the department is ... correct," and we will place the burden on the taxpayer to overcome this presumption. NMSA 1978, § 7–1–17(C) (1992); *Holt*, 2002–NMSC–034, ¶ 4, 133 N.M. 11, 59 P.3d 491. Therefore, in the present case, Taxpayers bear the burden of demonstrating that the hearing officer's decision is incorrect. *See Holt*, 2002–NMSC–034, ¶ 4, 133 N.M. 11, 59 P.3d 491.

## DISCUSSION

{9} Taxpayers' arguments are typical of the many taxpayer protester arguments summarily rejected by courts throughout the country. *See generally* Christopher S. Jackson, *The Inane Gospel of Tax Protest: Resist Rendering Unto Caesar—Whatever His Demands*, 32 Gonz. L.Rev. 291 (1996–97) (discussing common tax protester arguments). In fact, our Supreme Court recently issued an opinion in a case similar to the case at bar with the hope that the opinion would prevent future "unnecessary expenditure[s] of public resources" relating to frivolous taxpayer protests. *See Holt*, 2002–NMSC–034, ¶ 3, 133 N.M. 11, 59 P.3d 491. Ignoring the analysis and reasoning in *Holt*, Taxpayers in the present case assert equally frivolous arguments.

{10} On appeal, Taxpayers raise four "deficiencies" in response to the Department's assessment of a state tax liability and filing of a tax lien: (1) that the hearing officer's decision is void because the officer discharged her duties without taking an oath to uphold the constitutions of the United States and New Mexico and without obtaining a faithful performance bond; (2) that the hearing officer misapplied federal tax laws in determining Ms. Stockton's income tax liability; (3) that the hearing officer failed to submit a written request to the IRS for Ms. Stockton's tax information; and (4) that the hearing officer erred in relying on the RAR, because the RAR is hearsay, as it lacks an original signature, does not contain any attestation under oath, and does not actually state that Ms. Stockton owes any taxes to the federal government.

{11} Although we believe that the hearing officer's decision more than adequately addresses each of Taxpayers' arguments and that Taxpayers' brief fails to address the

"overwhelming authority discussed in the hearing officer's decision," we nonetheless address each of Taxpayers' arguments in turn. *See Holt,* 2002–NMSC–034, ¶ 4, 133 N.M. 11, 59 P.3d 491.

## A. The hearing officer's failure to take an oath or obtain a faithful performance bond does not affect Taxpayers' tax liability.

■ {12} Taxpayers argue that the hearing officer's denial of their protest is "null and void" because the hearing officer discharged her duties without taking an oath of office or obtaining a faithful performance bond. According to Taxpayers, the New Mexico Constitution requires hearing officers to swear an oath to uphold the United States and New Mexico constitutions. Additionally, Taxpayers argue that NMSA 1978, §§ 10–2–1 to –12 (1876, as amended through 1967), which they call the "Bond Act," requires Department employees to obtain "faithful performance bond[s]." Although we decline to address Taxpayers' arguments because Taxpayers have failed to provide authority for their contentions, we conclude that even if the hearing officer had been required to take an oath and provide a bond, her failure to have done so would not absolve Taxpayers of the tax liability.

■ {13} Article XX, section 1, of the New Mexico Constitution states the following:

Every person elected or appointed to any office shall, before entering upon his duties, take and subscribe to an oath or affirmation that he will support the constitution of the United States and the constitution and laws of this state, and that he will faithfully and impartially discharge the duties of his office to the best of his ability.

A plain reading of the above section indicates that only those individuals who are actually elected or appointed to a public office are required to take an oath to uphold the state and federal constitutions. In the present case, although Taxpayers argue that the hearing officer was elected or appointed to office, they cite to no authority in support of this proposition. *See Wilburn v. Stewart,* 110 N.M. 268, 272, 794 P.2d 1197, 1201 (1990) ("Issues raised in appellate briefs that are

unsupported by cited authority will not be reviewed ... on appeal."). Nor have Taxpayers refuted the hearing officer's finding that she is employed under the State Personnel Act, NMSA 1978, §§ 10–9–1 to –25 (1961, as amended through 1999), as opposed to being elected or appointed to office. Accordingly, we decline to review this issue.

■ {14} Taxpayers next rely on article XXII, section 19, of the New Mexico Constitution in support of their assertion that hearing officers are required to take an oath of office. That section, titled "First state officers," states the following:

Within thirty days after the issuance by the president of the United States of his proclamation announcing the result of said election so ascertained, all officers elected at such election, except members of the legislature, shall take the oath of office and give bond as required by this constitution or by the laws of the territory of New Mexico in case of like officers in the territory, county or district, and shall thereupon enter upon the duties of their respective offices; but the legislature may by law require such officers to give other or additional bonds as a condition of their continuance in office.

*Id.* However, as correctly observed by the Department, this section applies only to the first state officers elected after New Mexico became a state. Moreover, the section only applies to elected officers and, as previously discussed, hearing officers are not elected to office. Thus, we conclude that Taxpayers' reliance on this section is misplaced.

■ {15} Taxpayers next argue that Sections 10–2–1 to –12, which they call the "Bond Act," require Department employees to obtain "faithful performance bond[s]" and that the failure of the hearing officer to obtain such a bond renders her actions null and void. We disagree.

{16} Contrary to Taxpayers' assertions in their brief in chief, the section of our statutes that they call the "Bond Act" does not require an official to "take and file an official oath, hold a commission or other written authority, and give an official bond." (Emphasis omitted.) Rather, the language quot-

ed by Taxpayers comes from an attorney general opinion, which is cited in the annotation to Section 10–2–1. *See* 56 N.M. Op. Att'y Gen. 6396 (1956). Additionally, we observe that the statutory sections cited by Taxpayers do not actually impose a duty upon the hearing officer to obtain a bond, but rather describe various limitations and requirements of bondholders in general. *See generally* §§ 10–2–1 to –12. Actual bond requirements for various public officers are described in other sections of our statutes. *See, e.g.,* NMSA 1978, § 8–4–2 (1903) (requiring the assistant secretary of state to obtain a bond in the amount of $ 5,000); NMSA 1978, § 9–7–6(B)(11) (2001) (requiring the secretary of health and division directors to obtain bonds). While it is apparent that the Secretary of Taxation and Revenue, as well as division directors and any additional Department employees of the secretary's choosing, must obtain bonds, Taxpayers do not cite to any statutory authority requiring hearing officers at the Department to obtain bonds. *See* NMSA 1978, § 9–11–6(B)(11), (12) (1995). Accordingly, we decline to review this issue. *See Wilburn,* 110 N.M. at 272, 794 P.2d at 1201 (declining to review issues that are raised on appeal but are not supported by cited authority). Taxpayers also make several arguments about the priority and irrevocability of the "Bond Act." Because we are declining to address Taxpayers' argument about the applicability of the "Bond Act," we similarly decline to address these additional arguments.

■ {17} Even if we had reached Taxpayers' arguments and held that the hearing officer was required to swear an oath of office and/or obtain a bond, we are not convinced that her failure to do so would result in Taxpayers' escaping liability for their tax obligations. *Cf.* 84 C.J.S. *Taxation* § 467 (2001) ("As a general rule, notwithstanding an irregularity in an assessor's title to office arising from the assessor's election or in the matter of appointment, the duties performed by a de facto assessor, as far as the public and third persons are concerned, are valid and the assessment which the de facto assessor makes is valid and legal." (footnotes omitted)). Moreover, another general rule is that "[o]ne duly appointed ... to an office but

who is in law disqualified to act, such as one who has failed to take the required oath or to execute a bond within the time prescribed, is at least a de facto officer in that his or her acts are valid as to the public." 67 C.J.S. *Officers* § 343 (2002) (footnotes omitted). This proposition is well supported by the cases cited therein, in particular the cases of *Huff v. Sauer,* 243 Minn. 425, 68 N.W.2d 252, 254–55 (1955) (upholding police commissioners' termination of patrol officer although commissioners did not take oath), and *State v. Porter,* 272 N.C. 463, 158 S.E.2d 626, 627, 629 (1968) (upholding warrant issued by justice of the peace although the judge did not file a bond until after issuance of the warrant), as well as the policy reasons outlined in the cases. *See, e.g., id.* at 629 ("Endless confusion and expense would ensue if the members of society were required to determine at their peril the rightful authority of each person occupying a public office before they invoked or yielded to his official action." (internal quotation marks and citation omitted)). Taxpayers' first asserted "deficiency" thus fails as a matter of law.

**B. The hearing officer correctly determined that Ms. Stockton was liable for state income tax on wages earned by her employment in New Mexico.**

■ {18} Taxpayers' second asserted "deficiency" is that there is no federal statute imposing a tax on income on residents of the United States or on income earned in the United States and that the hearing officer erred in concluding to the contrary. According to Taxpayers, income taxes are excise taxes that are only imposed on nonresident aliens and corporations. Taxpayers therefore contend that Ms. Stockton's employment wages are not "income" for the purposes of income taxes. We disagree.

■ {19} Taxpayers' assertion that only nonresident aliens and foreign corporations are subject to a tax on income results from a strained misreading of the Internal Revenue Code (the Code) and is wholly without merit. *See Lubman v. Hall (In re Hall),* 174 B.R. 210, 213–14 (Bankr.E.D.Va.1994). The Code imposes a tax on the income of every individ-

ual who is a citizen or resident of the United States. 26 U.S.C. § 1 (2000); *see also Loofbourrow v. Comm'r of Internal Revenue Serv.*, 208 F.Supp.2d 698, 709 (S.D.Tex.2002). The Code also defines "taxable income" as "gross income[,] minus the deductions allowed by this chapter." 26 U.S.C. § 63 (2000). According to the Code, "gross income" is "all income from whatever source derived." 26 U.S.C. § 61(a) (2000). Gross income includes an individual's employment wages. *See Holt*, 2002–NMSC–034, ¶ 12, 133 N.M. 11, 59 P.3d 491. "The United States Supreme Court, as well as every circuit of the United States Court of Appeals, has recognized that employment wages are taxable income." *Id.* ¶ 14 (citing cases). We therefore reject Taxpayers' numerous arguments regarding their belief that the federal income tax is somehow limited to income earned in foreign countries.

{20} Taxpayers, relying on *Eisner v. Macomber*, 252 U.S. 189, 207, 40 S.Ct. 189, 64 L.Ed. 521 (1920), and *Doyle v. Mitchell Brothers Co.*, 247 U.S. 179, 185, 38 S.Ct. 467, 62 L.Ed. 1054 (1918), argue that our Supreme Court's holding in *Holt* is incorrect because income taxes are excise taxes or taxes upon corporate privileges. However, we observe that the Court in *Holt* distinguished both cases relied on by Taxpayers. *See Holt*, 2002–NMSC–034, ¶¶ 16–17, 133 N.M. 11, 59 P.3d 491. Moreover, other jurisdictions have similarly held that the holdings in *Eisner* and *Doyle* have no bearing on whether a taxpayer's employment wages are subject to the income tax. *See United States v. Rhodes*, 921 F.Supp. 261, 263 (M.D.Pa. 1996); *Roco v. Comm'r of Internal Revenue*, 121 T.C. 160, 165, 2003 WL 22100687 (2003); *Snyder v. Ind. Dep't of State Revenue*, 723 N.E.2d 487, 489–91 (Ind. T.C.2000); *Miller v. Comm'r of Revenue*, No. 2918, 1980 WL 1238, at * 6 (Minn. T.C. Dec. 23, 1980); *Bynum v. Dep't of Revenue*, No. TC–MD 020934C, 2003 WL 21674324, at * 3 (Or. T.C. July 8, 2003); *Ruland v. Dep't of Revenue*, No. 020171E, 2002 WL 32107265, at * 2 (Or. T.C. Nov. 29, 2002). We therefore conclude that Taxpayers' reliance on both cases is misplaced.

■ {21} Taxpayers next argue that the Paperwork Reduction Act of 1980(PRA), 44 U.S.C. §§ 3501 to 3520 (2000), prevents the Department from assessing a tax liability against them. The relevant PRA section provides that "no person shall be subject to any penalty for failing to comply with a collection of information ... if ... the collection of information does not display a valid control number." 44 U.S.C. § 3512(a)(1). Taxpayers argue that because the applicable tax forms in the present case lack a valid control number, the Department erred in assessing a tax liability against Ms. Stockton. This argument, however, has been considered and rejected by a number of courts as a frivolous taxpayer protest argument. *See James v. United States*, 970 F.2d 750, 753–54 n. 6 (10th Cir.1992) (holding that the lack of an OMB number on IRS notices and forms does not violate the PRA); *see also Salberg v. United States*, 969 F.2d 379, 384 (7th Cir.1992); *United States v. Kerwin*, 945 F.2d 92 (5th Cir.1991) (per curiam); *United States v. Wunder*, 919 F.2d 34, 38 (6th Cir.1990); *Springer v. United States*, 447 F.Supp.2d 1235, 1238–39 (N.D.Okla.2006). According to these cases, "[t]he PRA was not designed to 'repeal the statutory criminal penalty for failing to file an income tax return because tax regulations and instructions lack OMB numbers.'" *Springer*, 447 F.Supp.2d at 1238 (quoting *United States v. Dawes*, 951 F.2d 1189, 1193 (10th Cir.1991)); *see also United States v. Hicks*, 947 F.2d 1356, 1359 (9th Cir.1991) ("Congress enacted the PRA to keep agencies, including the IRS, from deluging the public with needless paperwork. It did not do so to create a loophole in the tax code."). This is because "'the requirement to file a tax return is mandated by statute, not by regulation,' and 'such explicit statutory requirements are not subject to the PRA.'" *Springer*, 447 F.Supp.2d at 1238 (quoting *Dawes*, 951 F.2d at 1191–92). Thus, to the extent that Taxpayers attempt to argue that the PRA somehow prevents the Department from assessing a tax liability against Ms. Stockton, we conclude that such arguments are without merit.

### C. The hearing officer was not required to submit a written request to the IRS.

■ {22} Taxpayers next contend that the hearing officer obtained federal tax infor-

mation about Ms. Stockton without filing a written request, as mandated by 26 U.S.C. § 6103(d)(1) (2000). This section provides that state agencies may obtain federal taxpayer returns and return information

> only upon written request by the head of such agency, body, or commission, and only to the representatives of such agency, body, or commission designated in such written request as the individuals who are to inspect or to receive the returns or return information on behalf of such agency, body, or commission.

Taxpayers argue that the Department's failure to file a written request for information prevents the Department from assessing a tax liability against Ms. Stockton. We conclude that the Department did not violate 26 U.S.C. § 6103(d)(1), and that even if it was violated, Taxpayers are not entitled to an abatement of Ms. Stockton's assessed tax liability or a dismissal of the Department's tax lien.

{23} In the present case, the Department acknowledges that a written request was not made to the IRS, but argues that the Department and the IRS have entered into a general agreement regarding the exchange of returns and return information. This general agreement, which is part of the record on appeal, was signed by the Department's cabinet secretary and by the IRS commissioner. The agreement provides that "[t]his agreement constitutes the requisite authorization pursuant to section 6103(d)(1) of the Code for IRS to disclose to, and permit inspection by, an Agency Representative of Federal returns and Federal return information[.]" Additionally, the agreement allows for the IRS and the Department to enter into an implementing agreement "prescribing the nature, quantity and mechanics for the continuous exchange of tax information, including criteria and tolerance for selection of tax returns and return information[.]" The hearing officer concluded that this agreement complied with the requirements of § 6103(d)(1). We agree.

{24} Taxpayers continue to argue, as they did before the hearing officer, that a general authorization for exchange is not the same thing as a written request. However, as recognized by the hearing officer, this argu-

ment has also been considered and rejected by a number of courts. *See Smith v. United States*, 964 F.2d 630, 634 (7th Cir.1992) (holding that a general authorization for exchange of information complied with the written request requirements of § 6103(d)); *Long v. United States*, 972 F.2d 1174, 1179 (10th Cir.1992) (holding that a general agreement between Colorado and the IRS satisfied the requirements of § 6103(d)); *McQueen v. United States*, 5 F.Supp.2d 473, 487–88 (S.D.Tex.1998) (holding that a general agreement between Texas and the IRS satisfied the requirements of § 6103(d)); *Taylor v. I.R.S.*, 186 B.R. 441, 452–53 (N.D.Iowa 1995) (holding that a general agreement between Iowa and the IRS satisfied the requirements of § 6103(d)); *Stone v. Comm'r of Internal Revenue*, 76 T.C.M. (CCH) 371 (1998) (concluding that a general agreement between Montana and the IRS satisfied the requirements of § 6103(d)). On appeal, Taxpayers do not present any contrary authority and instead argue that the above cases are incorrect because they are contrary to the intent of Congress. Although at least one court has questioned whether allowing disclosures of information pursuant to a general agreement but without a written request is contrary to congressional intent, that same court also observed that

> Congress has made no objection to the "standing" request by closing the loophole identified by the Seventh Circuit Court of Appeals with an amendment to § 6103 in the years since it was identified and the appearance of the identified provisions in the Agreements on Coordination between the IRS and the states.

*Taylor*, 186 B.R. at 452. Thus, in the absence of any actual showing of contrary congressional intent, we conclude that the disclosure of Ms. Stockton's federal tax information complied with § 6103(d)(1).

{25} Finally, we note that even if Taxpayers' tax information was obtained in violation of § 6103(d)(1), Ms. Stockton is not absolved of her tax liability. *See Nowicki v. Comm'r of Internal Revenue*, 262 F.3d 1162, 1163 (11th Cir.2001). Rather, the Code provides that Taxpayers may file suit against the IRS under 26 U.S.C. § 7431

(2000). *See Nowicki*, 262 F.3d at 1163. Violations of § 6103(d)(1) may also result in criminal penalties. *See* 26 U.S.C. § 7213 (2000); *Nowicki*, 262 F.3d at 1163. We therefore conclude that Taxpayers' third asserted "deficiency" is without merit.

### D. The hearing officer did not err in relying on the RAR.

 {26} Lastly, Taxpayers argue that the RAR relied on by the hearing officer in assessing Ms. Stockton's tax liability is "mere hearsay." According to Taxpayers, 26 U.S.C. § 6065 (2000) requires that the RAR contain an attestation under oath and an original signature. Additionally, Taxpayers claim that because the RAR does not contain any complete sentences stating that Ms. Stockton actually owed taxes to the federal government, the hearing officer erred in relying on it. Once again, we conclude that Taxpayer's arguments are without merit.

 {27} According to § 6065,

Except as otherwise provided by the Secretary, any return, declaration, statement, or other document required to be made under any provision of the internal revenue laws or regulations shall contain or be verified by a written declaration that it is made under the penalties of perjury.

As recognized by the hearing officer, however, this section only applies to documents filed by taxpayers—it does not apply to the IRS. *See Gudenau v. United States*, No. 05-00733, 2006 WL 2639472, at * 7 (D.Haw. Sept.11, 2006) ("Section 6065 addresses tax returns and other documents filed by the taxpayer; it does not apply to the IRS." (emphasis omitted)); *Nordbrock v. United States*, 173 F.Supp.2d 959, 973 (D.Ariz.2000) ("Section 6065 applies to returns and other written declarations filed by taxpayers. The statute does not require that a lien or other notice issued by the IRS be verified by a written declaration that it is made under penalty of perjury."); *Thompson v. I.R.S.*, 23 F.Supp.2d 923, 925 (N.D.Ind.1998) ("[T]he verification provision of § 6065 was enacted to permit taxpayers to submit a verified return rather than a notarized return, and does not apply to notices issued by IRS agents."); *Morelli v. Alexander*, 920 F.Supp. 556, 558

(S.D.N.Y.1996) ("Section 6065 was enacted to permit the *taxpayer* to submit a verified return rather than a notarized return and does not apply to notices issued by IRS agents." (citation omitted)); *In re White*, 168 B.R. 825, 833 (Bankr.D.Conn.1994) (Section 6065 "is intended to require taxpayers, not the Service, to make returns under penalties of perjury."); *Davis v. Comm'r of Internal Revenue*, 115 T.C. 35, 42, 2000 WL 1048515 (2000) ("[S]ection 6065 does not apply to notices issued by the Commissioner; its requirements are directed at documents that are originated by the taxpayer."). Although Taxpayers continue to argue that § 6065 covers not only taxpayers, but federal employees as well, Taxpayers do not cite to any authority contrary to the cases relied upon by the hearing officer. *See Wilburn*, 110 N.M. at 272, 794 P.2d at 1201.

 {28} Likewise, we disagree with Taxpayers' assertion that because the RAR lacked an valid control number, it is invalid. As observed by the Department, an RAR is not a request for information and therefore is not covered by § 3512 of the Paperwork Reduction Act of 1980. *See* 44 U.S.C. § 3512(a)(1) (2000). Moreover, as we previously noted, "[t]he PRA was not meant to provide criminals with an all-purpose escape hatch." *Hicks*, 947 F.2d at 1359. Thus, even if the PRA requires that RARs have control numbers, Ms. Stockton would not be able to use that fact to escape her tax liability.

 {29} Finally, Taxpayers argue that because the RAR itself lacks "a complete sentence" stating that Ms. Stockton owes taxes to the federal government, the hearing officer erred in relying on it. We observe, however, that the duty to pay taxes is statutory, and the fact that the RAR does not state that Ms. Stockton owes taxes in "a complete sentence" does not absolve Ms. Stockton of her obligation to pay taxes. Additionally, we note that the RAR indicates a "[b]alance [d]ue," that is, taxes owed by Ms. Stockton to the federal government for her failure to report income earned in 1999. We conclude that the hearing officer did not err in relying on the RAR to make her decision.

## CONCLUSION

{30} We affirm the hearing officer's denial of Taxpayers' protest.

{31} **IT IS SO ORDERED.**

WE CONCUR: A. JOSEPH ALARID and CELIA FOY CASTILLO, Judges.