This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

### IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**PEABODY COALSALES COMPANY,**

      Plaintiff-Appellant,

v.                                  **No. A-1-CA-36632**

**NEW MEXICO TAXATION AND
REVENUE DEPARTMENT,**

      Defendant-Appellee.

**APPEAL FROM THE ADMINISTRATIVE HEARINGS OFFICE**
**Dee Dee Hoxie, Hearing Officer**

Sutin, Thayer & Browne
Suzanne W. Bruckner
Christopher A. Holland
Wade L. Jackson
Albuquerque, NM

for Appellant

Peifer, Hanson & Mullins, P.A.
Mark T. Baker
Matthew E. Jackson
Albuquerque, NM

Keefe Law Firm
Lauren Keefe
Albuquerque, NM

for Appellee

### MEMORANDUM OPINION

**B. ZAMORA, Judge.**

**{1}** Based on the motion for amendment of opinion, the opinion filed May 31, 2019, is hereby withdrawn, and this opinion is filed in its stead. This case requires us to determine whether the NMSA 1978, Section 7-9-65 (1969) deduction of the Gross Receipts and Compensating Tax Act (the Act) applies to receipts from the sale of coal. Peabody Coalsales Company (Taxpayer) appeals from the administrative hearing officer's (AHO) decision and order denying its request for a tax refund arguing that the AHO erred when she concluded that the sale of coal cannot be deducted from gross receipts under Section 7-9-65. We conclude that the language of Section 7-9-65 permitting "receipts from selling chemicals and reagents in lots in excess of eighteen tons" to be deducted from gross receipts is inapplicable to receipts for the sale of coal. We affirm.

**BACKGROUND**

**{2}** Taxpayer consistently paid gross receipts taxes from its sale of coal to an Arizona power plant. In 2015, Taxpayer filed an application for a refund of gross receipts taxes paid in the amount of $6,407,751.74 from December 2011 through December 2012 for the receipts from the lots of coal sold to the power plant. Each car load of coal weighs approximately one hundred and twenty-five tons.

**{3}** Taxpayer claimed the coal was a "chemical" under Section 7-9-65 because the power plant utilized the coal to produce an "exothermic chemical reaction" and thus, it was eligible to be deducted from its gross receipts under the Act. The coal was crushed into dust at the power plant, blown into a boiler, and burned with stabilizing fuel, which generated heat. The heat caused the water in the boiler pipes to create steam. The steam turned steam turbines, which rotated through a magnetic field and produced electricity for the power plant.

**{4}** The Taxation and Revenue Department (the Department) denied Taxpayer's claim for a tax refund, concluding that coal is not a chemical within the meaning of Section 7-9-65. Taxpayer filed a formal protest and an administrative hearing was scheduled before the AHO.

**{5}** The AHO conducted a full evidentiary hearing at which both parties tendered expert witnesses. Taxpayer's expert, Dr. Richard Holder, a chemist, testified that "everything in this room is a chemical." In support of his explanation that everything is a chemical, he explained that a "chemical reaction" is "the transformation of one chemical into another and . . . involves the breaking and making of chemical bonds." According to Dr. Holder, burning coal causes a chemical reaction when the coal breaks down and forms new substances such as water, carbon dioxide, and sulfur. The Department countered with the testimony of Dr. Corey Leclerc, a professor in chemical engineering, who opined that he would not interpret the deduction for chemicals under Section 7-9-65 to apply to fuels. As an example, he explained that a paper mill using wood chips to make paper uses chemicals to treat the wood. Yet, he would never consider the wood chips coming into the paper mill or the paper going out of the mill to be chemicals.

**{6}** After the close of the evidence, the AHO issued extensive findings of fact and conclusions of law, concluding that (1) "[t]he deduction for sales of chemicals in lots in excess of [eighteen] tons was not intended to apply to the sales of coal"; (2) [t]he coal sold by the Taxpayer was not a chemical for purposes of the statute or regulation because it was not used for producing a chemical reaction"; and (3) [t]he Taxpayer failed to establish that it was entitled to the deduction as the right was not clearly and unambiguously expressed in the statute, and the statute must be construed strictly in favor of the [Department]." Thus, the AHO concluded that Taxpayer was not entitled to a deduction under Section 7-9-65 and denied its protest.

## DISCUSSION

### Standard of Review

**{7}** An appellate court may only reverse an AHO's decision if the decision is "(1) arbitrary, capricious or an abuse of discretion; (2) not supported by substantial evidence in the record; or (3) otherwise not in accordance with the law." NMSA 1978, § 7-1-25(C) (2015); *Stockton v. N.M. Taxation & Revenue Dep't*, 2007-NMCA-071, ¶ 8, 141 N.M. 860, 161 P.3d 905. It is the taxpayer's burden to establish the basis for vacating the AHO's decision. *Holt v. N.M. Dep't of Taxation & Revenue*, 2002-NMSC-034, ¶ 4, 133 N.M. 11, 59 P.3d 491. The interpretation and application of the Act is a question of law that we review de novo. *City of Eunice v. N.M. Taxation & Revenue Dep't*, 2014-NMCA-085, ¶ 8, 331 P.3d 986.

**{8}** In reviewing the AHO's decision, we presume that "[a]ny assessment of taxes or demand for payment made by the department is presumed to be correct." NMSA 1978, § 7-1-17(C) (2007). "The burden is on the taxpayer protesting an assessment by the Department to overcome the presumption that the Department's assessment is correct." *Holt*, 2002-NMSC-034, ¶ 4 (alterations, internal quotation marks, and citation omitted).

### Section 7-9-65 is Inapplicable to the Sale of Coal

**{9}** The issue before us is whether Section 7-9-65 of the Act entitled Taxpayer to deduct the sale of coal to the power plant from its gross receipts.

> Section 7-9-65 of the Act, provides:

> Receipts from selling chemicals or reagents to any mining, milling or oil company for use in processing ores or oil in a mill, smelter or refinery or in acidizing oil wells, *and receipts from selling chemicals or reagents in lots in excess of eighteen tons may be deducted from gross receipts.* Receipts from selling explosives, blasting powder or dynamite may not be deducted from gross receipts. (Emphasis added.)

The Department's corresponding regulation defines the term "chemical" as "a substance used for producing a chemical reaction." 3.2.223.7(B) NMAC.

**{10}** Taxpayer argues that coal used for energy production in sufficient quantities is a "chemical" under Section 7-9-65 and that the AHO improperly construed the statute to exclude coal as a chemical in light of the unambiguous plain meaning of the statute. In support of this argument, Taxpayer points to the explicit exclusions set out in Section 7-9-65 of other chemicals and chemical substances, such as dynamite, explosives and blasting powder, claiming that had the Legislature intended to exclude coal, it would have explicitly stated so in the statute. The Department responds that "Section 7-9-65 does not clearly and unambiguously establish a deduction for receipts from the sale of coal" and that the Legislature did not intend Section 7-9-65 to apply to receipts from the sale of coal.

**{11}** In determining legislative intent, we first look to the plain language of the statute, and refrain from further interpretation if the language is not ambiguous. *Marbob Energy Corp. v. N.M. Oil Conservation Comm'n*, 2009-NMSC-013, ¶ 9, 146 N.M. 24, 206 P.3d 135. "[W]here the language of the legislative act is doubtful or an adherence to the literal use of words would lead to injustice, absurdity or contradiction, the statute will be construed according to its obvious spirit or reason, even though this requires the rejection of words or the substitution of others." *N.M. Real Estate Comm'n v. Barger*, 2012-NMCA-081, ¶ 7, 284 P.3d 1112 (internal quotation marks and citation omitted). *See City of Eunice*, 2014-NMCA-085, ¶ 8 ("Tax statutes, like any other statutes, are to be interpreted in accordance with the legislative intent and in a manner that will not render the statutes' application absurd, unreasonable, or unjust." (internal quotation marks and citation omitted)). In ascertaining legislative intent, we must read all provisions of a statute together. *Key v. Chrysler Motors Corp.*, 1996-NMSC-038 ¶ 14, 121 N.M. 764, 918 P.2d 350.

**{12}** We apply the principles of statutory construction to determine whether Taxpayer's receipts for the sale of coal constitutes the selling of "chemicals" under Section 7-9-65. Because Taxpayer is claiming a tax deduction, we must strictly construe Section 7-9-65 in favor of the Department and "the right to the . . . deduction must be clearly and unambiguously expressed in the statute," and clearly proven by Taxpayer. *Sec. Escrow Corp. v. N.M. Taxation & Revenue Dep't*, 1988-NMCA-068, ¶ 8, 107 N.M. 540, 760 P.2d 1306. With this in mind, we must determine whether the plain meaning of Section 7-9-65 clearly and unambiguously provides a deduction for receipts from the sale of coal. It does not. Section 7-9-65 and its corresponding regulations do not mention the word coal or fuels. Had the Legislature intended to provide a deduction for the receipts from the sale of coal, it could have explicitly mentioned coal in Section 7-9-65, as it has in the enactment of other legislation. *See, e.g.*, NMSA 1978, § 7-9-88.2 (2001) (discussing a tax credit for "receipts from selling coal severed from Navajo Nation land"). Taxpayer does not dispute that coal is not explicitly mentioned in Section 7-9-65 and as such, Taxpayer asks us to construe the word "chemical" to encompass coal.

**{13}** Taxpayer argues that the word "chemicals" in Section 7-9-65 is "manifestly unambiguous" and includes coal. **[RB 7]** We disagree. "A statute is ambiguous when it can be understood by reasonably well-informed persons in two or more different

senses." *Maestas v. Zager*, 2007-NMSC-003, ¶ 9, 141 N.M. 154, 152 P.3d 141 (internal quotation marks and citation omitted). Dr. Holder and Dr. Leclerc disagree on the meaning of the word "chemical" as it is used in the Act. While it is true that coal can produce a chemical reaction so can numerous other substances, including for example, the application of chemicals to paper and/or wood chips in a paper mill, as Dr. LeClerc explained. Presumably, as Dr. Holder conceded, the burning of any object or substance will cause a chemical reaction. Indeed, during his testimony, Dr. Holder stated, "Everything in this room is a chemical." This disagreement illustrates the ambiguity in the statute. We conclude that the word "chemical" in Section 7-9-65 is ambiguous, thus, we proceed further in our quest to ascertain legislative intent. *See Pub. Serv. Co. of N.M. v. Diamond D. Const. Co.*, 2001-NMCA-082, ¶ 49, 131 N.M. 100, 33 P.3d 651 (stating when a statute is ambiguous we must "resort to principles of statutory construction to ascertain the [L]egislature's intent").

**{14}** Taxpayer also contends that the AHO improperly considered the intent of the Legislature in her analysis, as there was no ambiguity, need to correct a mistake, or absurdity in the application of the statute that required her to resort to the consideration of legislative intent. We disagree. As we have already established the statute is ambiguous. Moreover, "[i]n interpreting statutes, we seek to give effect to the Legislature's intent, and in determining intent we look to the language used and consider the statute's history and background." *Valenzuela v. Snyder*, 2014-NMCA-061, ¶ 16, 326 P.3d 1120 (internal quotation marks and citation omitted). The AHO did not err in considering the intent of the Legislature when she interpreted the statute.

**{15}** In determining Legislative intent, we read the statutory provisions together with "the presumption that the [L]egislature acted with full knowledge of relevant statutory and common law [t]hus, two statutes covering the same subject matter should be harmonized and construed together when possible, in a way that facilitates their operation and the achievement of their goals." *N.M. Indus. Energy Consumers v. PRC*, 2007-NMSC-053, ¶ 20, 142 N.M. 533, 168 P.3d 105 (emphasis, internal quotation marks, and citation omitted). Here, there is no indication that the Legislature intended to create a deduction for receipts for the sale of coal. During the 1966 legislative session, the Legislature enacted the deduction at issue and simultaneously enacted a separate deduction for sales of coal by the car load—sales of coal in excess of eighteen tons. *See* 1966 N.M. Laws, ch. 47, § 14(R) (codified as NMSA 1953, § 72-16A-14.20 (1969) ("Receipts from selling coal in carload lots may be deducted from gross receipts."); 1966 N.M. Laws, ch. 47, § 14(S) (codified as NMSA 1978, § 72-16A-14.21 (1969) ("receipts from selling chemicals or reagents . . . in lots in excess of eighteen tons may be deducted from gross receipts"). In 1973, the Legislature repealed the deduction for receipts from coal sold by the car load and thus, repealed a deduction for the sale of coal in excess of eighteen tons. *See* 1973 N.M. Laws, ch. 190, § 1. Despite this repeal, the Legislature did not amend Section 7-9-65 to include the sale of coal as part of the deduction. Since the repeal, the Department has published reports showing that it imposes gross receipts taxes on the sale of coal. *See High Ridge Hinkle Joint Venture v. City of Albuquerque*, 1998-NMSC-050, ¶ 5, 126 N.M. 413, 970 P.2d 599 (When presented with a question of statutory construction we will "give persuasive weight to

long-standing administrative constructions of statutes by the agency charged with administering them." (internal quotation marks and citations omitted)).

**{16}** Enacting a deduction for the sale of chemicals in excess of eighteen tons, and a separate deduction for the sale of coal in car loads, leads us to conclude that the Legislature did not intend for the Section 7-9-65 deduction to apply to the receipts from coal sales in lots more than eighteen tons. *See Valenzuela*, 2014-NMCA-061, ¶ 16 (recognizing that "in determining intent we look to the language used and consider the statute's history and background." (internal quotation marks and citation omitted)). The omission of the word "coal" from Section 7-9-65 and its inclusion in the now repealed Section 72-16A-14.20 signals the Legislature's intent that coal is not deductible under Section 7-9-65. *See United Rentals Nw., Inc. v. Yearout Mech., Inc.*, 2010-NMSC-030, ¶ 25, 148 N.M. 426, 237 P.3d 728 ("[I]f a statute on a particular subject omits a particular provision, inclusion of that provision in another related statute indicates an intent that the provision is not applicable to the statute from which it was omitted." (alteration, internal quotation marks, and citation omitted)).

**{17}** Lastly, the Legislature's most recent amendment of Section 7-9-65, effective July 1, 2019 reads:

> Receipts from selling chemicals or reagents to any mining, milling or oil company for use in processing ores or oil in a mill, smelter or refinery or in acidizing oil wells, and receipts from selling chemicals or reagents in lots in excess of eighteen tons *to any hard-rock mining or milling company for use in any combination of extracting, leaching, milling, smelting, refining or processing ore at a mine site*, may be deducted from gross receipts. Receipts from selling explosives, blasting powder or dynamite may not be deducted from gross receipts.

2019 N.M. Laws ch. 172, § 1 (emphasis added to new addition to the statute). By qualifying the sale of chemicals and reagents in this specific manner, the Legislature has further clarified its intent that Section 7-9-65 should not apply to the sale of coal to power plants for production of electricity. Although this amendment to Section 7-9-65 has not yet become effective, we look to the amendment as a useful tool in ascertaining legislative intent and to affirm what we have already concluded in our prior analysis.

**{18}** The AHO's interpretation of the Section 7-9-65 deduction for the sale of coal was not arbitrary, capricious or contrary to law. Therefore, we hold that Section 7-9-65 of the Act does not apply to receipts from the sale of coal.

**CONCLUSION**

**{19}** For the foregoing reasons, we affirm.

**{20}** **IT IS SO ORDERED.**

**BRIANA H. ZAMORA, Judge**

**WE CONCUR:**

**LINDA M. VANZI, Judge**

**JULIE J. VARGAS, Judge**