# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: 2024-NMCA-080

Filing Date: June 17, 2024

No. A-1-CA-39961

APACHE CORPORATION AND
SUBSIDIARIES,

 Protestant-Appellant,

v.

NEW MEXICO TAXATION & REVENUE
DEPARTMENT,

 Respondent-Appellee.

**APPEAL FROM THE ADMINISTRATIVE HEARINGS OFFICE**
**Brian VanDenzen, Chief Hearing Officer**

Gallagher & Kennedy, P.A.
Dalva L. Moellenberg
Gene F. Creely, II
Anthony J. "T.J." Trujillo
Santa Fe. NM

Spencer Fane, LLP
Frank Crociata
Scott Woody
Phoenix, AZ

for Appellant

Raúl Torrez, Attorney General
David Mittle, Special Assistant Attorney General
Santa Fe, NM

for Appellee

## OPINION

**BUSTAMANTE, Judge, retired, sitting by designation.**

**{1}**     This case presents multiple issues related to corporate income taxation under New Mexico's Corporate Income and Franchise Tax Act (the CIT), NMSA 1978 §§ 7-2A-1 to -31 (1981, as amended through 2024).[1] The dispositive issue is whether Apache Corporation (Taxpayer)—a multinational oil and gas production company—and its foreign subsidiaries can be deemed a "unitary corporation" as defined in Section 7-2A-2(Q). The Administrative Hearing Officer (AHO) concluded that the foreign subsidiaries could be included in the unitary corporation as a matter of statutory definition and factual circumstance. Concluding that the statutory definition excludes foreign subsidiaries not engaged in trade or business in the United States as a matter of law, we reverse.

## BACKGROUND

**{2}**     Taxpayer is a publicly traded, multinational corporation engaged in the business of petroleum and natural gas exploration and production with its primary offices located in Houston, Texas. Prior to 2015, Taxpayer conducted its business through domestic and foreign subsidiaries. The foreign subsidiaries consisted of holding companies, financing companies, and exploration and production entities incorporated and operating in Australia, Egypt, Canada, Argentina, and the United Kingdom. During the relevant tax year, Taxpayer's foreign subsidiaries paid dividends, generated Subpart F income, or otherwise generated check-the-box income attributed to and partially reported by Taxpayer on its 2015 federal tax return. This appeal concerns only the income attributed to Taxpayer's foreign subsidiaries.

**{3}**     In March 2017, the New Mexico Taxation and Revenue Department (the Department) issued a notice of assessment of corporate income tax for the 2015 reporting period to Taxpayer. Taxpayer timely protested the assessment in June 2017. The protest asserted a number of grounds, including: (1) the foreign source dividends were not unitary income apportionable to New Mexico; (2) the foreign source dividends were not business income apportionable to New Mexico; (3) New Mexico's treatment of foreign dividends was discriminatory and thus unconstitutional; and (4) assessment of penalties was not supportable. A year later Taxpayer filed a supplemental protest arguing for the first time that Section 7-2A-2(Q) excluded foreign corporations incorporated in a foreign country and not engaged in trade or business in the United States from the definition of a "unitary corporation" for all purposes under the CIT.

**{4}**     After a four day hearing before the AHO, the parties filed proposed findings of facts and conclusions of law and written closing arguments. The AHO issued a lengthy decision and order ruling—in relevant part—that Taxpayer and its foreign subsidiaries amounted to a unitary corporation under Section 7-2A-2(Q). The AHO in turn concluded that the dividends paid to Taxpayer by its foreign subsidiaries and other income attributed to Taxpayer were subject to the CIT. The AHO also concluded that the

---

1All reference to Sections 7-2A-1 to -31 in this opinion are to the 2015 version of the CIT unless otherwise noted.

Department's apportionment methodology reasonably and fairly calculated how much of the foreign dividends were subject to the tax. Taxpayer appeals.

**DISCUSSION**

**{5}** On appeal from the decision and order of an AHO, we may reverse only if it is "(1) arbitrary, capricious or an abuse of discretion; (2) not supported by substantial evidence in the record; or (3) otherwise not in accordance with the law." NMSA 1978, § 7-1-25(C) (2015); *Stockton v. N.M. Tax'n & Revenue Dep't*, 2007-NMCA-071, ¶ 8, 141 N.M. 860, 161 P.3d 905. New Mexico's taxation scheme imposes a presumption that "[a]ny assessment . . . made by the [D]epartment is . . . correct." NMSA 1978, § 7-1-17(C) (2007, amended 2023). However, when we are presented with a question of law—such as the proper interpretation of a statute—we apply the traditional de novo standard of review. *TPL, Inc. v. N.M. Tax'n & Revenue Dep't*, 2003-NMSC-007, ¶ 10, 133 N.M. 447, 64 P.3d 474. When applying the de novo standard, courts are not bound by a hearing officer's legal interpretations or conclusions. *Id.*

**{6}** Generally, "[i]n construing the language of a statute, our goal and guiding principle is to give effect to the intent of the Legislature." *Lujan Grisham v. Romero*, 2021-NMSC-009, ¶ 23, 483 P.3d 545. "In determining legislative intent, [appellate courts] look to the plain language of the statute and the context in which it was enacted, taking into account its history and background." *Pirtle v. Legis. Council*, 2021-NMSC-026, ¶ 14, 492 P.3d 586. Moreover, "[w]e consider all parts of the statute together, reading the statute in its entirety and construing each part in connection with every other part to produce a harmonious whole." *Dep't of Game & Fish v. Rawlings*, 2019-NMCA-018, ¶ 6, 436 P.3d 741 (alterations, internal quotation marks, and citation omitted).

**{7}** Taxpayer argues that the AHO's construction of the statutory definition of "unitary corporation" codified in Section 7-2A-2(Q) was wrong. We have conducted a reasonably comprehensive survey of relevant case law and prior AHO orders dealing with unitary corporations. Our review has not uncovered any instance where a similar argument has been made. We are thus presented with a matter of first impression. We agree with Taxpayer's argument and explain.

**{8}** The CIT imposes a tax upon the "net income of every domestic corporation and upon the net income of every foreign corporation employed or engaged in the transaction of business in, into or from this state or deriving any income from any property or employment within this state." Section 7-2A-3(A). "A unitary corporation that is subject to taxation under the [CIT] . . . may elect to file a combined return with other unitary corporations as though the entire combined net income were that of one corporation. . . . The return filed under this method of reporting shall include the net income of all the unitary corporations." Section 7-2A-8.3(A). There is no question that Taxpayer is subject to taxation under the CIT. And, there is no question that Taxpayer filed a combined return for the 2015 tax year.

**{9}** The question is whether Taxpayer's foreign dividend income is taxable by New Mexico. The answer to that question under federal constitutional requirements depends on whether Taxpayer and its foreign subsidiaries can be deemed unitary corporations. *See Container Corp. of Am. v. Franchise Tax Bd.*, 463 U.S. 159 (1983) (discussing generally the history and development of the United States Supreme Court's case law concerning the ability of states to tax extraterritorially derived income of corporations and approving California's taxing scheme taxing dividend income received from foreign subsidiaries). Whether Taxpayer and its foreign subsidiaries can be treated as "unitary corporations" in turn depends on the meaning of Section 7-2A-2(Q).

**{10}** Section 7-2A-2(Q) defines "unitary corporation" as

> two or more integrated corporations, other than any foreign corporation incorporated in a foreign country and not engaged in trade or business in the United States during the taxable year, that are owned in the amount of more than fifty percent and controlled by the same person and for which at least one of the following conditions exists:
>
> > (1)     there is a unity of operations evidenced by central purchasing, advertising, accounting or other centralized services;
> >
> > (2)     there is a centralized management or executive force and centralized system of operation; or
> >
> > (3)     the operations of the corporations are dependent upon or contribute property or services to one another individually or as a group.

Section 7-2A-2(Q) includes three elements; two that must be present and one that acts as a carve-out provision excluding a class of entities from the definition. The positive requirements are: (1) the corporations "are owned in the amount of more than fifty percent and controlled by the same person," *id*., and that (2) the corporations satisfy the "three unities test." Section 7-2A-2(Q)(1)-(3). The three unities test—detailed in the numbered subparagraphs of Section 7-2A-2(Q)—is used to determine whether the state taxation of extraterritorial income of a business operating in interstate commerce meets the due process requirements of the federal constitution. *See Exxon Corp. v. Wisconsin Dep't of Revenue*, 447 U.S. 207, 219-223 (1980) (including as factors in the constitutional analysis "functional integration, centralization of management, and economies of scale" (internal quotation marks and citation omitted)).

**{11}** The third element of Section 7-2A-2(Q) is negative; that is, it excludes from the definition of "unitary corporations" "any foreign corporation incorporated in a foreign country and not engaged in trade or business in the United States during the taxable year." In keeping with the plain language approach to statutory interpretation, the most natural interpretation of this simple and straightforward language is that foreign subsidiaries of corporations subject to taxation in New Mexico are not to be included in the unitary corporate group for purposes of apportionment of income even if they meet

the two positive qualifications. *See High Ridge Hinkle Joint Venture v. City of Albuquerque*, 1998-NMSC-050, ¶ 5, 126 N.M. 413, 970 P.2d 599 ("[T]he plain language of a statute is the primary indicator of legislative intent." (internal quotation marks and citation omitted)).

**{12}**   It has been undisputed throughout these proceedings that the fourteen subsidiaries included in the Department's assessment were incorporated in foreign countries. There was a dispute before the AHO about whether they met the second qualification, but in its supplemental brief filed at this Court's request, the Department conceded that the foreign subsidiaries did not engage in trade or business in the United States during the taxable period. As such, Taxpayer's foreign subsidiaries should not have been included in its unitary corporation.

**{13}**   The AHO analyzed the statute as follows:

> By reading the statutory definition holistically, if the activities of the foreign subsidiary satisfy the three numbered subparts of Section 7-2A-2(Q), that foreign subsidiary would have substantially contributed to the flow of value to the domestic corporation engaged in business and trade in New Mexico. A foreign corporation's contribution of value, as demonstrated by meeting the subparts of the statute, to the domestic entity engaged in New Mexico business activity would necessarily mean it had engaged in activity in the United States through its unitary relationship with the domestic corporation.

AHO's conclusion of law is to the same effect: "By meeting the three statutory conditions of Section 7-2A-2[](Q), a foreign corporation affiliated with another corporation engaged in New Mexico business activity has itself necessarily engaged in unitary business activities within New Mexico and the United States."

**{14}**   We disagree with the AHO's analysis because it negates the existence of the carve-out. If satisfaction of the three unities test determines that a taxpayer "engaged in trade or business in the United States," § 7-2A-2(Q), the carve-out would cease to have any effect. So long as the three unities test was met, the foreign corporation exclusion would be a nonsequitur. *See Am. Fed'n of State, Cnty. & Mun. Emps. (AFSCME) v. City of Albuquerque*, 2013-NMCA-063, ¶ 5, 304 P.3d 443 ("Statutes must also be construed so that no part of the statute is rendered surplusage or superfluous." (internal quotation marks and citation omitted)). This cannot be.

**{15}**   In contrast, our interpretation of the foreign subsidiary carve-out language fits the history of the United States Supreme Court's jurisprudence dealing with state taxation of extraterritorial income and New Mexico's response to that jurisprudence. As a general principle, a state may not tax value earned outside its borders. *Conn. Gen. Life Ins. Co. v. Johnson*, 303 U.S. 77, 80-81 (1938). That principle has been substantially refined by the concept that income from interstate activities of a single corporation or an integrated group of corporations can be apportioned based on income attributable to the

corporation's activities within a state. *See Mobil Oil Corp. v. Comm'r of Taxes*, 445 U.S. 425, 436 (1980) ("[T]he income of a business operating in interstate commerce is not immune from fairly apportioned state taxation."). "It has long been settled that the entire net income of a corporation, generated by interstate as well as intrastate activities, may be fairly apportioned among the [s]tates for tax purposes by formulas utilizing in-state aspects of interstate affairs." *Exxon Corp.*, 447 U.S. at 219 (internal quotation marks and citations omitted). The Due Process Clause of the Fourteenth Amendment requires "a minimal connection between the interstate activities and the taxing [s]tate, and a rational relationship between the income attributed to the [s]tate and the intrastate values of the enterprise." *Mobil Oil Corp.*, 445 U.S. at 436-437 (internal quotation marks and citation omitted). "The requisite 'nexus' is supplied if the corporation avails itself of the substantial privilege of carrying on business within the [s]tate." *Id.* (internal quotation marks and citation omitted). Stated more simply, "[t]he simple but controlling question is whether the state has given anything for which it can ask return." *ASARCO, Inc. v. Idaho State Tax Comm'n*, 458 U.S. 307, 315 (1982) (internal quotation marks and citation omitted); *see F. W. Woolworth Co. v. Tax'n and Rev. Dep't of New Mexico*, 458 U.S. 354 (1982) (reversing the New Mexico Supreme Court and holding that New Mexico had misapplied the three unities test).

**{16}**     "The linchpin of apportionability in the field of state income taxation is the unitary-business principle." *Mobil Oil Corp.*, 445 U.S at 439. "[A] relevant question in the unitary business inquiry is whether contributions to income of the subsidiaries resulted from functional integration, centralization of management, and economies of scale." *Container Corp. of Am.*, 463 U.S. at 179 (alterations, internal quotation marks, and citation omitted). These factors are commonly referred to as the three unities test. "Having determined that a certain set of activities constitute a 'unitary business,' a [s]tate must then apply a formula apportioning the income of that business within and without the [s]tate. Such an apportionment formula must, under both the Due Process and Commerce Clauses, be fair." *Id.* at 169.

**{17}**     The three unities test was first adopted in New Mexico 1986 as part of a significant amendment of our tax statutes. 1986 N.M. Laws, ch. 20, § 33. It is reasonable to surmise that adoption of the test was prompted by the United States Supreme Court's opinions referenced above—perhaps, in particular, *F. W. Woolworth*. *See* 458 U.S. at 372 (concluding that the "tax d[id] not bear the necessary relationship to opportunities, benefits, or protection conferred or afforded by the taxing [s]tate" and "New Mexico's tax thus fails to meet established due process standards").

**{18}**     In 1992, the United States Supreme Court was presented with a new issue. It was asked to decide how the Foreign Commerce Clause—U.S. Const., art. 1, § 8, cl. 3—affected state taxation of international unitary corporations. *Kraft Gen. Foods, Inc. v. Iowa Dep't of Revenue & Fin.*, 505 U.S. 71 (1992). In *Kraft*, the Supreme Court held that the Iowa tax scheme unconstitutionally discriminated against foreign commerce in that it allowed a "deduction for dividends received from domestic subsidiaries, but not for those received from foreign subsidiaries." *Id.* at 74, 79.

**{19}** *Kraft* resonated in New Mexico. In 1992, Section 7-2A-8.3(D) (1986) allowed corporate taxpayers to file separate returns even if they were part of a unitary corporation. Section 7-2A-8.3(B) (1986) provided "[t]he secretary shall not require or permit a foreign corporation incorporated in a foreign country and not engaged in trade or business in the United States during the taxable year to report through a combined return." Both of these provisions were enacted in 1983. *Compare* 1983 N.M. Laws, ch. 213, § 12, *with* § 7-2A-8.3 (1986). The Legislature apparently recognized that the separate filing option in New Mexico similarly operated to allow the deduction of domestic dividends but not foreign dividends, thus creating the same problem found unconstitutional in *Kraft.* The language of Section 7-2A-8.3(B) (1986)—specifically barring certain foreign corporations from filing combined returns—could only have exacerbated the *Kraft*-related issues.

**{20}** The Legislature addressed the issue in its 1993 session. According to a Fiscal Impact Report (FIR) prepared by the Legislative Finance Committee (LFC), H.B. 680 was designed to address the problem raised by *Kraft*. Fiscal Impact Report H.B. 680, *Significant Issues*, at 1-2 (N.M. Feb. 21, 1993). Part of the solution was to eliminate the separate filing option and require unitary corporations to file on a combined or consolidated basis for taxable years beginning January 1, 1993. Fiscal Impact Report H.B. 680, *Significant Issues*, at 1-2. Another part of the solution was to amend the definition of "unitary corporations" "to exclude foreign corporations incorporated in a foreign country and not engaged in business in the United States." Fiscal Impact Report H.B. 680, *Synopsis of Bill*, at 1. The amendment of the definition was described as "simply mov[ing] language from Section 7-2A-8.3." Fiscal Impact Report H.B. 680, *Synopsis of Bill*, at 1.

**{21}** On March 11, 1993, the then-secretary of the Department submitted his own bill analysis and FIR on an amended version of H.B. 680. Bill Analysis and Fiscal Impact Report H.B. 680 (N.M. Mar. 11, 1993). The secretary's memorandum also cited the *Kraft* opinion as the motivating factor for the suggested changes. Bill Analysis and Fiscal Impact Report H.B. 680, *Administrative Impact*, at 2. Pertinent to our issue, the secretary also stated that, among other things, the proposed legislation included "[a]mendments to [Section] 7-2A-2 [that] change the definition of 'unitary corporations' to exclude foreign corporations not engaged in business in the U.S." Bill Analysis and Fiscal Impact Report H.B. 680, *Description*, at 1. The LFC's FIR and the secretary's memorandum clearly referred to Section 7-2A-8.3(B) as the source of the language being moved.

**{22}** The amendments to the definition of "unitary corporations" described in the FIRs were enacted by Chapter 307, Section 3 of New Mexico Laws of 1993 and Chapter 309, Section 1 of New Mexico Laws of 1993.[2] The amendment moved only part of the Section 7-2A-8.3 (1992) language quoted above to the definition section of the statute. *Compare* § 7-2A-8.3(D) (1992), *with* 1993 N.M. Laws, ch. 307, § 1. The explicit reporting and return references in Section 7-2A-8.3(B) were stripped away. Only the

---

[2]Section 7-2A-8.3(B) (1992) was entirely omitted by Laws, 1993, ch. 307, § 4 and Laws 1993, ch. 309 § 2.

language at issue in this case was moved. *Compare* § 7-2A-8.3(D) (1992), *with* 1993 N.M. Laws, ch. 307, § 1, *and* § 7-2A-2(Q). As inserted into the definition of "unitary corporations," the effect of the language is just as described in the LFC FIR and the secretary's memorandum: it excludes foreign corporations from the definition of unitary corporations. Fiscal Impact Report H.B. 680, *Synopsis of Bill*, at 1; Bill Analysis and Fiscal Impact Report H.B. 680, *Description*, at 1. Whether inadvertent or not, the Legislature's language achieved a solution to the *Kraft* problem: if foreign subsidiaries are excluded from the definition of "unitary corporation" the dividends they pay to domestic parents cannot be included as taxable income. The Department has not provided any basis for us not to enforce the plain import of the language.

**CONCLUSION**

**{23}**　For the reasons stated above, we reverse the decision and order of the AHO and remand for proceedings in accordance with this opinion.

**{24}　IT IS SO ORDERED.**

**MICHAEL D. BUSTAMANTE, Judge,**
**retired, Sitting by designation.**

**WE CONCUR:**

**JANE B. YOHALEM, Judge**

**KATHERINE A. WRAY, Judge**